# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JAN H. C. GOODWIN,**
Former Executive Director,
New Mexico Educational Retirement Board,

        **Plaintiff,**

**v.**                                    **Case No. 1:21-cv-00483**

**GOVERNOR MICHELLE LUJAN GRISHAM**,
individually and as Governor of the State of New Mexico;
**STATE OF NEW MEXICO**; **STATE OF NEW MEXICO**
**OFFICE OF THE GOVERNOR; NEW MEXICO STATE**
**DEPARTMENT OF FINANCE AND ADMINISTRATION (DFA);**
**DEBORAH K. ROMERO**, individually and as Cabinet Secretary
of DFA; **NEW MEXICO STATE RISK MANAGEMENT**
**DIVISION (NMRMD); MARK TYNDALL**, individually and as
Director of NMRMD**; NEW MEXICO EDUCATIONAL RETIREMENT**
**BOARD (NMERB)**; **STEVEN GLUCKSTERN, RUSSELL GOFF,**
**LARRY MAGID, MARY LOU CAMERON, DONALD**
**DUSZYNSKI, RYAN STEWART** and **ALAN DELGADO**,
**individually and as Trustees of the NMERB;** and **YET-TO-BE-**
**IDENTIFIED CO-CONSPIRATORS, ENABLERS AND/OR**
**AGENTS,**

        **Defendants.**

**COMPLAINT FOR VIOLATION OF THE NEW MEXICO FAIR PAY FOR WOMEN ACT, NMSA 2016, SECTION 28-23-1, *ET SEQ*.; FOR VIOLATION OF THE EQUAL PAY ACT OF 1963, 29 U.S.C., SECTION 206(d); FOR RELIEF IN ACCORDANCE WITH THE LILLY LEDBETTER FAIR PAY ACT OF 2009; FOR GENDER AND RACE DISCRIMINATION and ILLEGAL RETALIATION IN VIOLATION OF THE UNITED STATES CIVIL RIGHTS ACT OF 1964 and THE NEW MEXICO HUMAN RIGHTS ACT; FOR AGE DISCRIMINATION IN VIOLATION OF THE UNITED STATES AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 and THE NEW MEXICO HUMAN RIGHTS ACT; FOR VIOLATION OF 42 UNITED STATES CODE, SECTION 1983, and THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; FOR VIOLATION OF THE DUE PROCESS, EQUAL PROTECTION and SEX DISCRIMINATION CLAUSES OF THE NEW MEXICO CONSTITUTION; FOR VIOLATION OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT; FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; FOR INTENTIONAL INTERFERENCE WITH EMPLOYMENT CONTRACT; FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; FOR BREACH OF FIDUCIARY DUTY and FOR CIVIL CONSPIRACY**

**COMES NOW** the Plaintiff, Jan H. C. Goodwin, by and through her legal counsel, Merit Bennett, *Esq*., of The Bennett Law Group, LLC, and for her complaint against the Defendants, states as follows:

## JURISDICTION

1.     The Plaintiff brings this action pursuant to the United States Constitution, the New Mexico Constitution, the United States Equal Pay Act of 1963, the Lily Ledbetter Fair Pay Act of 2009, the United State Civil Rights Act of 1964, the New Mexico Fair Pay for Women Act, the New Mexico Human Rights Act, the New Mexico Whistleblower Protection Act, the United States Age Discrimination in Employment Act, Section 1983 of Title 42 of the United States Code and New Mexico Contract and Tort Law.

2.     Jurisdiction over the federal claims is proper under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over state law claims, including those arising from the New Mexico Constitution, the New Mexico Fair Pay for Women Act, the New Mexico Human Rights Act, the New Mexico Whistleblower Protection Act and other state tort claims pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.     Plaintiff Jan H. C. Goodwin (hereinafter "Plaintiff" or "Ms. Goodwin") is a female over forty (40) years of age (now 61 years old) who was recently forced to terminate her employment (constructively discharged by forced resignation) with the State of New Mexico, *ex rel*. the New Mexico Educational Retirement Board ("NMERB" or "ERB") as its Executive Director, for which position she has been employed since March of 2008.  At all times relevant herein, Ms. Goodwin was a resident of Santa Fe, Santa Fe County, New Mexico

2

4.      Defendant Michelle Lujan Grisham (hereinafter "Governor Lujan Grisham," "Governor" or "Lujan Grisham" or the "State" or "state government" or one of "Defendants") is and was, at all relevant times herein since January 1, 2019, the Governor of the State of New Mexico, acting at all times herein as Governor on behalf of the State of New Mexico and/or individually under color of state law.  Any reference to this Defendant shall also be deemed to be a reference to the Defendant State of New Mexico Office of the Governor.

5.      Defendant State of New Mexico (also herein the "State" or "state government" or one of "Defendants") is the governmental entity employing all other named Defendants whose acts and/or omissions described hereinbelow were accomplished under color of state law and therefore have obligated the State for responsibility and liability for their misconduct, pursuant to the doctrine of *respondeat superior* and pursuant to 42 U.S.C., Section 1983.

6.      Defendant State of New Mexico Office of the Governor (also herein "Office of the Governor," "The Office of the Governor," "Governor," "State of New Mexico" and/or "State") is a New Mexico state governmental entity by and through which the Governor (including Defendant Michelle Lujan Grisham and the governors of preceding administrations) and the Governor's cabinet secretaries exercise the authority and perform the duties of the office of the Governor of the State of New Mexico.  At all times herein, any reference to Governor Lujan Grisham, to the "Governor," to any cabinet secretary or to any other appointee of the Governor shall also be reference to, and shall therefore also bind to the liability established herein, The Office of the Governor as a separate and distinct governmental entity of the State of New Mexico.

7.      Defendant New Mexico Department of Finance and Administration ("DFA" or the "State" or "state government" or one of "Defendants") is a New Mexico state governmental entity

whose acts and/or omission described hereinbelow have obligated the State for responsibility and liability for its misconduct.

8.      Defendant Deborah K. Romero (hereinafter also referred to as "DFA," "Defendant Romero," "Secretary Romero," "DFA Secretary Romero," "cabinet secretary" or one of "Defendants") is currently the Cabinet Secretary of DFA, appointed by, and acting at all times on behalf of, with regard to all related matters herein, Governor Lujan Grisham and/or the State and/or herself under color of state law, whose acts and/or omissions described hereinbelow have obligated DFA and/or the State and/or the Office of the Governor and/or the Governor for full responsibility and liability for Secretary Romero's individual (and/or one or more of the named Defendants' collective) misconduct.

9.      Defendant State of New Mexico Risk Management Division ("NMRMD, "RMD" or the "State" or "state government" or one of "Defendants") is a New Mexico state governmental entity whose acts and/or omission described hereinbelow have obligated the State for responsibility and liability for its misconduct.  Defendant Mark Tyndall (also referred to as "NMRMD," "RMD," the "State," "Defendant Tyndall" or one of "Defendants") is the Director of RMD and at all times herein was acting under color of state law and breached the duty he and NMRMD owed to Plaintiff by failing to intervene and prevent and/or correct the harm being inflicted upon Plaintiff as is described hereinbelow.

10.     Defendant New Mexico Educational Retirement Board (hereinafter "NMERB" or "ERB" or the "State" or one of "Defendants") is a New Mexico state governmental agency which administers the retirement investment portfolio of New Mexico state teachers, school administrators

and school employees and is also included as a defendant herein to, among other things, insure the enforceability of any judgement awarded to Plaintiff.

11.     Defendants Steven Gluckstern, Russell Goff, Larry Magid, Mary Lou Cameron, Donald Duszynski, Ryan Stewart and Alan Delgado (hereinafter individually and collectively also referred to as "Defendants" or "NMERB" or "ERB" or "NMERB Trustees" or "NMERB Board Trustees" or "Board Trustees" or "Trustees") are the current members of the Board of Trustees of NMERB and, at all times and for all matters referenced hereinbelow, were and still are acting at all times on behalf of themselves (and/or their predecessors), NMERB and/or the State and under color of state law.

12.     Defendants State of New Mexico, Office of the Governor, DFA, RMD and NMERB are separate and distinct entities/offices/agencies of the government of the State of New Mexico, each with the power to recommend, approve, deny, adjust and/or influence the amount of compensation paid to the Executive Director of the NMERB, *i.e.*, to Plaintiff herein Jan Goodwin, and at issue herein is the failure of one or more or all of these entities/offices/agencies to afford Ms. Goodwin pay equal to that paid to her male counterpart for her equal work.

13.     Defendants Yet-to-be-identified Co-conspirators, Enablers and/or Agents are those individuals and/or state agencies who may have engaged in, enabled and/or facilitated the accomplishment of, any of the misconduct described below, either unilaterally or acting as an agent of another named Defendant, which caused Plaintiff to suffer the harm or damage described. Any reference to "Defendant" or "Defendants" also includes reference to these other yet-to-be-identified individual actors and/or agents and/or enablers and/or co-conspirators of one or more or all of the named Defendants.

**ESSENTIAL FACTS**

**Plaintiff Jan H. C. Goodwin:**

14.     Ms. Goodwin is, among her other educational degrees, professional certifications and other accomplishments, a Certified Public Accountant and a Member of the American Institute of Certified Public Accountants, with a Bachelor's Degree in Environmental Science (Wesleyan University), a Master's Degrees in Business Administration (New York University), and a Master's Degree in Health Administration (University of New Mexico), with certifications as a Certified Employee Benefits Specialist (International Foundation of Employee Benefit Plans) and Certified with the Information Techology Infrastructure Library (ITIL) Foundation.  *See*  Plaintiff's *curriculum vitae* attached hereto as **Exhibit A**.

15.     Ms. Goodwin was born in Albany, New York, and her first consequential employment was with Coopers & Lybrand in New York City (1985-1993), before it merged with Price Waterhouse, as a Senior Associate (Financial Advisory Services) and Supervisor (Personal Financial Services).  She then became Vice President and an Investment Analyst/Compliance Officer with Arbor Capital Partners in New York City (1993-1994).

16.     In 1993, Ms. Goodwin met her husband, who was a resident of Santa Fe,  and married in 1994, becoming herself a resident of Santa Fe.

17.     From 1994 to 1996, Ms. Goodwin served as a Senior Consultant for Summit Equity, Inc., in Santa Fe and in London, England.

18.     Ms. Goodwin was employed as the Cash Management and Investment Officer for the City of Santa Fe from 1996 to 1998.

19.     Ms. Goodwin was first employed with the State of New Mexico as the Deputy Director of the State Investment Council in 1998, accountable for the financial, administrative and information technology functions of the agency managing and investing New Mexico's permanent endowment funds, for the preparation of investment accounting reports of the State Investment Council and external clients and to establish and maintain effective controls to safeguard managed funds.

20.     In 2000, Ms. Goodwin was appointed to the position of the Director for the State Board of Finance, where she administered the State of New Mexico's major severance tax bonds and general obligation bond programs.  She also directed the work of numerous external economists and professionals, including attorneys, financial advisors and economic consultants. She also directed the research for all matters to be brought before the State Board of Finance, including such topics as new programs for state universities, major real estate purchases and sales by public entities, major construction contracts for state entities, awarding emergency grant money and issuing of debt by state agencies and institutions of higher education, all in order to brief the Board members on the specifics of each of the transactions requiring their approval.

During the performance of these duties, Ms. Goodwin uncovered unusual patterns of investment transactions at the State Treasurer's Office, many of which violated the State Treasurer's investment policy, and forwarded her findings to the Federal Bureau of Investigation (FBI) for further investigation, thereby preventing the State and its citizen taxpayers from wasting millions of dollars investing in corrupt transactions and practices.

Ms. Goodwin also provided oversight to the State Treasurer's office responsible for the investment of $4 billion, including the State general fund, bond proceeds and the local government investment pool.

21.     Because of her unsurpassed education, experience and acumen, and her committed service to and her extraordinary beneficial performance for the citizens of our state,  Ms. Goodwin was appointed by Governor-Elect Bill Richardson to be Cabinet Secretary for Taxation and Revenue in December of 2002, and began serving in that capacity January 1, 2003.  She was responsible for collecting and distributing over $7 billion annually in taxes and fees to state and local governments, with approximately 1,200 employees and 60 offices across the state.  She was responsible and accountable for the agency's $84 million operating budget.  She was the first Cabinet Secretary in many years in New Mexico to make on-site visits to all 60 department offices across the state.

Ms. Goodwin's extraordinary service to the citizens of our state resulted in many tangible benefits to the public at large, including, but not limited to:

- Reducing the average wait time at motor vehicle offices across the state by more than 50% (from 30 minutes to 14 minutes), by launching strategic, multi-faceted campaigns, encouraging the public to complete their need for services online via the DMV website, installing self-service kiosks in every MVD office and installing greeters to ensure that customers had completed all required paperwork to process their desired transactions.

- Overseeing implementation of software for 28 tax programs which replaced the former system, in order to allow for more accurate tax revenue collection, refunds and distribution.

- Cutting the state's uninsured driver rate from one of the highest in the U.S. (at 32%) to less than the national average (at 12%), thus funding protection for our citizens injured by the negligence of uninsured motorists throughout our state.

- Executing a new initiative designed to improve delinquent tax collections, collecting a total of $395 million (58% above the $250 million baseline), in order for the state to be better able to fund essential services for all of its citizens.

- Improving the formerly contentious relationship between the State's Tax Department and the State's Society of Certified Public Accountants by establishing a dedicated customer service line with the audit and compliance division (tax practitioner's hotline) and by conducting regular outreach meetings, so that the state's tax accounting practitioners could better serve the general public and provide them with the maximum available tax benefit at the minimum legal tax rate.

- Eliminating the conditions that caused the qualified audit opinions on the department's financial statements which had existed for more than 15 years, thereby providing more clear accountability to our citizen taxpayers for the expenditure of their tax dollars.

**Illegal Pay Disparity:**

22.     In March of 2008, Ms. Goodwin, then 48 years old, was appointed to serve as the Executive Director of the Educational Retirement Board for the State of New Mexico ("NMERB").

23.     It was Ms. Goodwin's job to secure the funding for the retirement of all of the public school teachers of New Mexico who dedicated their lives to the education of our elementary, high school and state college youth. Her expertise and dedication to this work over the last 13 years has insured that our state's education retirement fund was always profitable and secure.

24.     Her appointment was unfortunately marred by the fact that she was to be paid an annual salary approximately $13,000.00 less than that of her male counterpart, then Executive Director of the New Mexico Public Employees Retirement Association ("PERA") Mr. Terry Slattery, who was then approximately 10 years older than Ms. Goodwin.  These two jobs required equal skill, effort and responsibility and were both performed under similar working conditions. There were no differences between these two job positions because of a seniority system.

25.     In August of 2009, Ms. Goodwin's annual salary was finally increased to an amount comparable to that paid to Mr. Slattery, an acknowledgment by the Defendants that she had not been receiving pay equal to that paid to her male counterpart, that such pay disparity was illegal and that

the illegal disparity required correction.  Despite this acknowledgment, Ms. Goodwin's deficient back pay was not addressed by the Defendants, nor corrected by payment of the difference for which she should have received for those 18 months.  Since that time until the present, such pay disparity, which has continually manifested, in varying degrees, in Ms. Goodwin's unequal compensation for work she was performing equal to that of her male peers, has been continuous and ongoing and constitutes accumulating violations of state and federal anti-discrimination and equal pay laws which prohibit such pattern and practice of institutional and systemic gender, age and race discrimination directed at Ms. Goodwin since from, at the very least, March of 2008; and therefore, because the disparity in her pay has never been consistently corrected and still exists to the date of Ms. Goodwin's recent forced termination, Ms. Goodwin is now entitled to receive payment in an amount reflecting the total accumulation of any such illegally-withheld differential paycheck amounts, together with statutory interest accruing from the date each of such differential amounts were illegally unpaid.

26.     In April of 2010, Mr. Steven Moise was hired as the New Mexico State Investment Council's (NMSIC's) Senior Investment Officer, **to be paid an annual salary of over $100,000.00 more than that paid to Ms. Goodwin as Executive Director of the NMERB**.  These two jobs require equal skill, effort and responsibility and were both performed under similar working conditions.  There were no differences between these two job positions because of a seniority system. Notwithstanding this enormous, unconscionable and obviously illegal disparity, Ms. Goodwin's salary was not increased by Governors Richardson, Martinez nor Lujan Grisham, nor by DFA, RMD, NMERB nor NMERB's Trustees, to match that of Mr. Moise, a male approximately 10 years older than Ms. Goodwin, despite the fact that their two jobs required equal skill, equal

effort and equal responsibility and were performed under similar working conditions and that there were no differences between these two job positions because of any seniority system.

27.     In fact, at the time of his appointment, Mr. Moise did not have the professional experience required by New Mexico statute ("at least [five (at that time)] years of investment and executive experience to direct the work of the investment office" - *see* NMSA 1978, Section 6-8-4) in order to qualify him for employment as the state's chief investment officer - to be able to even assume the position, but his illegal appointment was nevertheless accomplished by then Governor Bill Richardson and was duly ignored by Governor Martinez throughout her tenure and by Defendant Governor Lujan Grisham upon her taking office.  **(Defendant Lujan Grisham, and by implication all Defendants, was/were formally requested to cure the enormous pay disparity between Mr. Moise and Ms. Goodwin, and all Defendants knew that Ms. Goodwin was clearly more qualified than Mr. Moise and had consistently produced better results for the educational employees of the State of New Mexico than had Mr. Moise, under the scrutiny of any reasonable comparative analysis.  *Again see* Plaintiff's *curriculum vitae* attached as Exhibit A and paragraphs 21-23 of this Complaint, *infra*.)**

28.     It is important to note that Mr. Moise <u>only</u> oversees the management of investment portfolios, while Ms. Goodwin not only oversees the management of investment portfolios, she also performs retirement plan administration providing financial security for all of the public education employees within the State of New Mexico in their retirement.

29.     **When comparing the accomplishments of the two agencies overseen by Ms. Goodwin and Mr. Moise, it becomes crystal clear that the work performed by Ms. Goodwin is more complex, more demanding, requires more competence and overall has produced equal**

**or better results for the state of New Mexico and for ERB's state employee constituents.** *See*
*Comparison of the Service and Performance of the NM State Investment Council Under Steven*
*Moise Measured Against the Performance of the NM Educational Retirement Board Under Jan*
*Goodwin*, attached hereto and incorporated herein as **Exhibit B**.

30. **And finally, NMERB, under the management of Ms. Goodwin, has consistently**
**outperformed the State Investment Council while the NMSIC has been under the management**
**of Mr. Moise.**

- Ms. Goodwin has successfully led three legislative initiatives to increase ERB's
sustainability and increase equity among plan members.

- Ms. Goodwin has significantly increased the use of cost-effective investment
strategies, including internal management of investments, saving tens of millions of
dollars every year she has been in office.

- Ms. Goodwin commissioned a report by the University of New Mexico's Bureau
of Economic Research to document and quantify the disparity in the salaries and
pension benefits of the state's educational employees (predominately female) with
those of other state employees (until recently, predominately male) over time.

- Ms. Goodwin has implemented numerous policies to improve transparency in
financial reporting.

*See also* the *Legislative Finance Committee Investment Report For the Quarter Ending June*
*30, 2018*, attached as **Exhibit C**. (**"When compared with peer funds greater than $1 billion on**
**a net-of-fee basis, the ERB fund [under the direction of Plaintiff Ms. Goodwin] performed in**
**the highest quartile for the quarter, three-year, and ten-year periods, and it performed above**
**the median for the one-year and five-year periods."** *Id.*, at p. 1.)

*See also New Mexico Legislative Finance Committee, Legislating for Results: Policy and*
*Performance Analysis; Report to the Fifty-Fourth Legislature, Second Session, Volume I*, attached

as **Exhibit D**. (**"The ERB pension fund was the only one of the state's investments to perform above the median for all periods reported."** *Id*., at p. 21.)

31.    That this illegal pay disparity between Mr. Moise and Ms. Goodwin has been publicly and privately exposed and known by the administrations of Governors Richardson, Martinez and Lujan Grisham (and by DFA and NMERB, and their respective Secretaries/Trustees) to continue to exist is truly outrageous, not only because Mr. Moise's original appointment was illegal because of his lack of qualification (and remains illegal notwithstanding the passage of time), but also because Ms. Goodwin is demonstrably more qualified and deserving than Mr. Moise, in terms of education, experience and on-the-job performance**. It appears that the current Governor and other named Defendants are giving discriminatory deference to Mr. Moise and concomitant disparagement to Ms. Goodwin because Mr. Moise is an older male, because Ms. Goodwin is a younger female close to the age of the Governor and because Ms. Goodwin is a Caucasian female, while the Governor is a Hispanic female who, by statute, is paid far less than Ms. Goodwin (thus also infusing the discrimination being perpetrated against Ms. Goodwin with a racially-motivated bias).**

32.    Accordingly, the reason for this discriminatory pay disparity can only be attributed to illegally prohibited discrimination based upon race and/or gender and/or age.

33.    **And, in any event, even in the absence of any proof of any illegal discriminatory intent (although such proof is considerable, and compelling), the single fact that Ms. Goodwin is not being paid equal pay for equal work establishes that there are clear and incontestable violations of the New Mexico Fair Pay For Women Act, NMSA 2016, Section 28-23-1,** *et seq*.,

and the Equal Pay Act of 1963, 29 U.S.C., Section 206(d), *neither of which Acts require proof of a discriminatory intent - only proof that the pay disparity exists*.

34.    In fact, the Defendants have tacitly and openly admitted the existence of this illegal disparity for the last five years, yet continued to discriminate against and underpay Plaintiff over the years of her employment with the State, notwithstanding, and likely also in retaliation for, Plaintiff's ongoing complaints of unequal pay and her continual efforts to have the State correct the disparity.

A.    **On June 24, 2016, the Defendant Educational Retirement Board duly voted and approved an increase in Plaintiff's salary, to be phased in over three years, to attempt to narrow the illegal pay gap she had been experiencing vis-a-vis Mr. Moise, which increase was never implemented by the New Mexico Department of Finance and Administration ("DFA") at the direction of then Governor Susana Martinez.** This increase in Plaintiff's salary would have moved her pay level from the bottom of the fourth (lowest) quartile to that of the median range for other directors of similarly-sized United States public pension plans.

B.    **On December 8, 2017, and on May 3, 2018, the NMERB again voted to increase Plaintiff's salary to almost correct the disparity (this vote was a protected complaint of discrimination (hereinafter "protected complaint") made on behalf of Plaintiff), and both efforts were again illegally "vetoed" by Governor Martinez via DFA (retaliation against Plaintiff for this protected complaint), without any citation to any authority she might have to do so (because no such authority exists).** *See* letter dated April 25, 2018, from Mary Lou Cameron, Chair of the Board of Trustees, New Mexico Educational Retirement Board, addressed to Duffy Rodriguez, Cabinet Secretary for the New Mexico Department of Finance and Administration (DFA), pointing out DFA's illegal failure to implement the equalization of Ms.

Goodwin's pay and advising that there was no legal basis for such discriminatory inaction (another protected complaint made on behalf of Plaintiff), attached as **Exhibit E**.

> **... [T]he [ERB] Board maintains that any effort by DFA [*ex. rel* the Governor] or its employees to veto, undo or override the decisions and actions of the [ERB] Board on salaries [including that of Jan Goodwin] is unlawful and invalid.** *Id*., at page 2. Emphasis supplied.

C.      **On May 24, 2018, the NMERB once again voted to increase Plaintiff's salary to almost correct the disparity and notified DFA to implement this increase (another protected complaint)**. *See* **Exhibit F**.  (None of these efforts initiated by NMERB (6/24/2016, 12/8/2017. 5/3/2018 and in 2019) either addressed or required that Ms. Goodwin's historical pay disparity be addressed and compensated.)

D.      **In early 2019, after Defendant Lujan Grisham took office, the NMERB resubmitted the ERB Board-approved paperwork to increase Plaintiff's salary to be "almost equal" to that of Mr. Moise (another protected complaint), and DFA was this time instructed by Defendant Governor Lujan Grisham <u>not</u> to implement the <u>46% raise</u> necessary to almost afford Ms. Goodwin with pay equal to her male counterpart, Mr. Moise (retaliation for this protected complaint).** (<u>Only a 5% pay raise was implemented</u> on May 8, 2019, ostensibly at the direction of Defendant Lujan Grisham by which she clearly acknowledged the scale of the pay disparity, but no other efforts to eliminate this illegal pay disparity have since been initiated, undertaken or approved by the Governor or DFA to date (ongoing retaliation for this protected complaint).

In fact, when the 5% raise was approved, the Governor/DFA also increased Ms. Goodwin's salary pay range to be in the same salary pay range of Mr. Moise, yet, even with the 5% raise, Ms. Goodwin's actual salary was not even enough to be greater than the lowest salary in the pay range

that she had just been approved for!  And therefore the glaring pay disparity was known to all Defendants.

E. **Mr. Moise himself has admitted that Ms. Goodwin should be paid equal to him. Mr. Moise confessed to Mr. Charles Wollmann, Director of Communications, Legislative and Client Relations, New Mexico State Investment Council, that when he [Mr. Moise] was asked in May of 2019 by John Bingaman, Governor Lujan Grisham's Chief of Staff, if Ms. Goodwin's salary should be increased to a level virtually equal to the salary paid to Mr. Moise, Mr. Moise replied to Mr. Bingaman by stating that Ms. Goodwin's salary should indeed be increased to an amount virtually equivalent to his salary, thus admitting that Ms. Goodwin's job was essentially, and at the very least,  "equal" to that of Mr. Moise (that both of their jobs required equal skill, effort and responsibility and were performed under similar working conditions), requiring that there be an immediate upward adjustment of Ms. Goodwin's salary to insure that Ms. Goodwin received pay equal to that of Mr. Moise in accordance with state and federal law.**

F. **In an email dated November 29, 2020, from Mark Baker, then attorney for the NMERB, addressed to General Counsel for Defendant Lujan Grisham, Matt Garcia, on behalf of NMERB and Plaintiff, Mr. Baker urged Mr. Garcia to advise Defendant Lujan Grisham to not block the duly and legally approved pay raise for Plaintiff which was approved and passed by the NMERB Board, because "I [Mr. Baker] view the ERB's status as a constitutionally-created board with an independent fiduciary duty to administer the educational retirement fund, along with the fact that everyone is paid through ERB funds rather than general fund money, as compelling reasons to look at this differently than other**

salary determinations ... **I also see some disparities across the State's three major funds – SIC, PERA, and ERB, that warrant scrutiny**." *See* email dated November 29, 2020, from Mark Baker, attached as **Exhibit G**.  Emphasis supplied.  This email, along with other verbal and written communications emanating from Plaintiff and representatives of the ERB, constituted protected complaints of illegal discrimination made to Defendants for and on behalf of Plaintiff.

**Despite this clear advice - and unequivocal warnings (protected complaints), the Defendant Governor and the other Defendants nevertheless retaliated against Plaintiff by continuing to refuse to permit Ms. Goodwin to be paid equal to her equivalent counterpart, Mr. Moise, in direct violation of state and federal anti-discrimination and equal pay laws.**  In fact, Defendant Governor Lujan Grisham exerted this illegal power over the independent NMERB Board in the absence of any clear legal authority to do so, with the sole intent to discriminate against Ms. Goodwin and deny her pay equal to that of her male counterpart because Ms. Goodwin is an older, Caucasian woman.

**NMERB Files Lawsuit:**

G.       **Because Governor Lujan Grisham was conspiring with DFA to block pay raises authorized by NMERB for its senior officials, including Plaintiff, and because the Governor refused to cease her openly illegal misconduct, the NMERB was forced to file an extra-ordinary intra-agency lawsuit on February 22, 2021, against Defendant Romero and DFA, seeking declaratory relief to attempt to cure (not totally but, at least, substantially) this illegal, and constitutionally impermissible, misconduct.  *See* the Complaint filed by the NMERB attached hereto as Exhibit H.  (Hereinafter "NMERB Complaint")**

The NMERB Complaint does not address the civil rights issues raised herein, nor does it accurately calculate the relevant pay disparity existing between Plaintiff and Mr. Moise, nor does it seek retroactive correction of the pay disparity to its full legal extent, but it nevertheless constitutes a tacit protected complaint of gender and age discrimination made on behalf of Plaintiff, and other similarly-situated and underpaid female NMERB employees, and it constitutes incontrovertible evidence that the current administration's continued retaliatory defiance of any legal restraint on its power, to include its blatant rejection of its obligation to adhere to fundamental equal rights laws, is likely commonplace throughout this administration and is therefore perniciously arrogant and tortiously illegal.

NMERB must compensate professional staff [including Plaintiff] at competitive levels given the size of the fund, the sophistication required to competently manage and invest it, and national competition in the public and private sector for individuals qualified to do this work.  NMERB Complaint, **Exhibit H**, at p. 3, para. 11.

The Board has sole authority to employ the Director [Plaintiff], who is the administrative officer for the Board [and to establish her salary] charged with carrying out the provisions of the Educational Retirement Act and who has additional duties provided for by regulation.  Moreover, the Legislature has specified that '[t]he amount of salaries and fees to be paid by the board [to Plaintiff] shall be fixed by the regulations of the board.  NMSA 1978, Section 22-11-10(A).'  *Id*., at p. 3, para. 13.

In accordance with its authority and responsibility, the Board adopted regulations providing that the Director [Plaintiff] serves 'at the pleasure of the board and at a salary to be set by the board ... 2.82.1.13 NMAC.'  *Id.*, at p. 3, para. 14

**The Governor does not have authority to interfere with the [NMERB] Board's fiduciary obligations, including the Board's determinations regarding appropriate salaries to pay NMERB staff [such as Plaintiff].** As a result, DFA never should have submitted NMERB salary increases to the Governor's office for approval, and directives from the Governor's office related to NMERB staff compensation [including denial of pay equity for Plaintiff, retroactively and prospectively] are not a basis for changing Board-approved decisions.  *Id*., at pp. 10-11, para. 58.  Emphasis supplied.

18

Plaintiff Jan Goodwin is specifically referred to in the NMERB Complaint as "Professional

Staff Member 3."  *See* **Exhibit H**, paras. 34-39, pp. 7-8.

In particular:

Para. 38.     **DFA's [illegal and discriminatory] failure to implement
[NMERB]Board approved salary increases for Professional Staff Member 3
[Plaintiff Jan Goodwin] resulted in Professional Staff Member 3 [Plaintiff Jan
Goodwin] being underpaid by a total of $202,696.33.** [This amount is less than,
and does not account for, the total of the illegal disparity in pay (and lost benefits)
accruing since Plaintiff's appointment to serve as Director of NMERB, when
compared to the salary paid to her equal pay/equal work equivalent, Steven Moise]
*Id.*, at p. 7.  Emphasis supplied.

Para. 39.  Having served in New Mexico government with distinction for decades,
Professional Staff Member 3 [Plaintiff Jan Goodwin] was prepared to take a higher-
paying position with a public retirement fund outside New Mexico in March 2016.
When the Board [NMERB] learned that Professional Staff Member 3 [Plaintiff Jan
Goodwin] was being recruited for that position, Board members secured Professional
Staff Member 3's [Plaintiff Jan Goodwin's] agreement to remain at NMERB based
on assurances that the Board would take care of the [illegal and discrimnatory]
compensation discrepancy.  *Id.*

H.     **In fact, Defendants Lujan Grisham and DFA Secretary Romero (who only

recently assumed office) and/or one or more of the other individual Defendants, singly or in

concert, and/or NMERB (if permitted by the Governor and DFA to exercise its authority)

could have immediately acted to correct the disparities referred to in the NMERB Complaint,

including the larger equal pay disparity claimed by Plaintiff herein, <u>with a single stroke of the

pen</u>, but she/they did not do so, and she/they continued to fail to do so, because all of them

(State of New Mexico, DFA and all named individual Defendants, acting under color of state

law), except for NMERB and its Trustees, willingly joined the conspiracy with Defendant

Lujan Grisham to muzzle pay equity in our state  -  specifically with regard to Ms. Goodwin,

thus ultimately forcing Ms. Goodwin to leave her employment with the State of New Mexico**

19

**and move to another state in order to be compensated at the rate of pay which she deserved for all of the many years of exemplary service she has delivered to the citizens of our state, including especially our public school teachers, administrators and other employees who ensure the safe and wholesome education of our children.**

It also was the duty of Defendants NMRMD and Mark Tyndall and RMD to pro-actively, preemptively and retroactively assess, avoid and avert risks to state government such as those posed by the illegal misconduct described throughout this Complaint, and yet these particular Defendants also abjectly failed to advise the other Defendants of such risks or otherwise take action to insure that such risks did not materialize in the form of the illegal harm ultimately inflicted upon Ms. Goodwin  as is set forth hereinabove, especially after the NMERB Complaint was filed in March of 2021.

The Governor's and her administration's silence in the face of the NMERB Complaint constitutes a tacit admission by the Governor and her administration that they were deliberately violating the New Mexico Fair Pay for Women Act and committing the other violations alleged throughout this Complaint, yet the Governor instead abrogated her responsibilities to the citizens of our state, knowing that her conduct in doing so was illegal, and even immoral, and would consequently result in grave financial, emotional and professional harm to the Plaintiff and would cause Plaintiff to resign her position with state government and leave her home state of NM to find employment elsewhere.  The Governor perpetrated this illegality also knowing that it would result in financial harm to our state's public school teachers and administrators.

When the Governor, Defendant Romero and Defendant Tyndall and the other Defendants all breached their duty(ies) owed to Plaintiff to ensure that Plaintiff was paid equal pay for her work

which was equal to that performed by male state employees, such as Mr. Moise, by failing to immediately correct Ms. Goodwin's multi-year pay disparity after being served with the NMERB Complaint (**Exhibit H**) (more retaliation for the protected complaints, included those embodied in the NMERB Complaint), Ms. Goodwin then knew that she was being forced to resign (constructively discharged - forced termination) her employment with the State of New Mexico in retaliation for her protected complaints, because her home state government, while under the control of the complicit individual Defendants, had no intention of ever curing the pay disparity that she had endured for all of the years she served our citizens, and she therefore was compelled to accept the offer of employment from New Hampshire, which provided her with a starting salary virtually equal to that offered to men of equal qualifications throughout the United States, to include Mr. Moise in New Mexico.

This slow-moving tragedy should be unacceptable to any citizen of our state as it sets a horrible precedent for the financial well-being of all hard-working women in our state who deserve to be paid equal to men who perform equal work, and a warning message should be sent far and wide by the jury hearing this case that such blatant, pervasive and institutional mistreatment of highly-educated and highly-qualified female administrators, especially such as Ms. Goodwin, should be rectified to the full economic and legal extent possible - punctuated by an additional award of treble damages as is mandated by the New Mexico Fair Pay for Women Act in order to punish discriminating offenders and to send a strong message to our institutions and businesses that the historical gender pay disparities that pervade across our state must immediately cease.

35.    Not only was Ms. Goodwin deliberately forced by the Defendants to seek employment in another state because the Defendants refused to pay her at a rate equal to that of her

21

male counterpart, Mr. Moise, Ms. Goodwin has also been forced to be physically separated across the country from her husband and two adult sons who all had to stay behind in New Mexico when Ms. Goodwin left to begin her new job in New Hampshire, which forced separation has understandably inflicted severe and undeserved emotional distress on the whole family, especially during the COVID-19 pandemic.   The Defendants, individually and altogether, bear the full responsibility for this foreseeable consequence of their unlawful, outrageous and frankly senseless mistreatment of Ms. Goodwin, and all of them must be held fully accountable for this cold-hearted and patently illegal misconduct.  (The NMERB and its Trustees were the only Defendants who made a good faith, albeit inadequate, effort to substantially correct the pay disparity.)

36.     It might be understandable that the Governor's better (and legal) angels have been missing in action, because the Governor herself is being underpaid.  In 2019, a Biz Journal (The Business Journals) study showed that Governor Lujan Grisham was paid a base annual salary of only $110,000.00 by the State of New Mexico, which makes her the 39th-highest-paid governor in the country and the 487th-highest-paid New Mexico state employee.  For all of the extraordinary work and leadership the Governor performs for our state and the incalculable benefit she usually brings to our fellow citizens, this gross underpayment is totally unacceptable, just as is the failure to equally compensate one of our pre-eminent New Mexico public servants, Plaintiff Jan Goodwin.

**Yet, because Defendant Lujan Grisham knew that she would never herself be paid equal to this white woman of the same age (Plaintiff Ms. Goodwin), the Governor (beset by this trifecta of race, gender and age discriminatory animus) unfortunately and illegally refused, in conspiracy with Defendant Romero (a younger Hispanic female) and others yet to be**

**identified, to permit Ms. Goodwin to be paid equal to her male counterpart, Mr. Moise, for the equal (and even more) work that Ms. Goodwin was performing for our state.**

(The undersigned counsel for Plaintiff contends that the New Mexico Fair Pay For Women Act and the federal Equal Pay Act of 1963 both prohibit such a disparity and that Governor Lujan Grisham herself could assert a claim against the State of New Mexico for equal pay, because, as she is the uniquely pre-eminent "employee" in the state, there are no other state employees who could possibly be deemed to be performing "equal work;" and, therefore, the Governor is entitled to demand pay equal to that of her better-paid counterparts in other states. She should not have to seek ways to expense food and clothing in order to reduce her financial stress while serving the people of our state. *See* https://amp.kob.com/articles/4-investigates-review-of-expenses-reveals-governor-spending-most-of-her-discretionary-fund-on-groceries-6016437.html.)

Yet, however sympathetic one might be for the Governor's personal situation, her deliberate disregard for her oath of office and her malicious and illegal mistreatment of Ms. Goodwin can never be excused - and can only be fully remedied by the jury composed of the citizens of our state who will hear this case. Instead of misdirecting her animus toward Ms. Goodwin, the Governor should have insured that Ms. Goodwin and Mr. Moise received equal paychecks, either by accepting, and adjusting upward, NMERB's recommended pay increase for Ms. Goodwin or by unilaterally directing DFA to implement the full pay increase for Ms. Goodwin necessary to eradicate the pay disparity (to include correcting the disparity retroactively to its inception, pursuant to the clear direction of federal and state law). DFA's and RMD's failure to mandate such course-correction was consistent with their silent conspiracy with the Governor and the other Defendants to discriminate against Plaintiff.

<u>All</u> of the women of New Mexico deserve equal pay for their performance of work equal to that performed by men, and the example for that fundamental maxim of workplace equality must be firmly and unequivocally established in our state, if not by the Governor and her co-conspirators and the other named Defendants, then <u>here</u> and <u>now</u> by the citizen-jurors of this state who will be called upon to right this egregious wrong perpetrated against a loyal, hard-working and devoted civil servant who has served our state employees since 1998 and the teachers of our state since 2008 - Plaintiff herein, Jan Goodwin.

**Plaintiff's Excellent Job Performance:**

37.     Finally, the Defendants cannot contend that the pay disparity exists because of any failure of Plaintiff to meet the expectations of her job as the Executive Director of NMERB, because, in her most recent (2020) performance rating issued by the NMERB Board, it is stated:

**Financial Performance**

... Certainly, she [Executive Director Jan Goodwin] continues to exceed performance expectations, despite the way she has been treated [by] the  [ ] NM administration [Defendant Governor Lujan Grisham] to not allow us [the Board] to reward her [Ms. Goodwin] financially at a level she certainly deserves. She [Ms. Goodwin] performs all these financial tasks exceptionally well.

**Strategic Planning**

... Jan displays an excellent command of the issues we have.  Outstanding.  She always seems to have a Strategic Plan on the books and one in her back pocket when changes need to be made....

**Overall Evaluation Comments**

**... * To find a consistent approach to the salary issue.**

**Need to find a way to address the salary issue for the leadership [Ms. Goodwin] that is consistent and fair...**

[We] place a very high value on her [Ms. Goodwin's] daily efforts as Executive Director of the ERB, and [we] believe that every member of the Board is equally impressed by her daily performance in that capacity.  Jan has a work ethic that is laser-focused to assure that ERB members [public school administration and teachers] get the absolute best return on their life-long investments.

... [T]heir [state fund managers'] combined ability to manage ERB funds, under Jan's leadership is simply outstanding.... [We are] constantly amazed at our quarterly reports that show, in the vast majority of cases, how well our funds have done and how well our investments are positioned.

Additionally, [we] see her [Jan] work tirelessly, yet diplomatically, with sometimes contentious stakeholders, and make concise, yet clear, presentations to numerous legislative committees on behalf of ERB. [We] have the sense that her status among the state legislators with whom she interacts is positive and that they respect her opinion and depth of knowledge on the topics she addresses.

*See* Jan Goodwin's 2020 Evaluation attached as **Exhibit I**.  Emphasis supplied.

38.     Because the Defendants have abjectly failed to correct this illegal pay disparity over the span of Ms. Goodwin's employment with the State of New Mexico as its Executive Director of the State's Educational Retirement Board, serving our state's educational system's employees, Ms. Goodwin has been forced to resign and will be formally constructively terminated as of May 28, 2021, (last day on the payroll) with her last day in the office on March 20, 2021, so that she can assume employment by the State of New Hampshire at a rate of pay comparable to that of Mr. Moise and to which she has been legally entitled and for which she has struggled, without success, to obtain over these many years.

39.     Because Defendants have failed since 2010 to pay Plaintiff the level of compensation that  she was entitled to be paid, even when a lawsuit was filed this year by NMERB against DFA highlighting the pay disparity and challenging the Governor's right to ignore the law - and Governor Lujan Grisham still did nothing to rectify the last ten years of the illegal discrimination which was intentionally perpetrated against this loyal, and valuable, New Mexico public servant, Ms. Goodwin

25

finally "got the message" that equity for her as an older, white woman would never be forthcoming from our state government.  She was therefore forced to leave her home state and seek equity in another state (New Hampshire), which immediately recognized that Ms. Goodwin's knowledge, experience and history of proven performance would manifest an economic benefit for their employees which would be far, far greater than the cost of her salary - which starting salary amount is almost the same amount as what she should have been paid in New Mexico by these Defendants.

40.     The Defendants' deliberate refusal to keep Ms. Goodwin in New Mexico (by refusing to pay her an amount equal to that paid to her male counterpart) in order to insure the continued economic health of our state's educational retirement system that Ms. Goodwin worked so hard to achieve for our state's educators and administrators, simply makes no economic sense - and, therefore, could only be born from illegal discriminatory prejudice.

41.     As a direct consequence of the illegal misconduct described above, Plaintiff has suffered irreparable harm, to include, but not limited to, loss of income, loss of the use of all unpaid income, loss of PERA retirement benefits, emotional distress and all other recoverable damages, including pre- and post-judgment interest, statutory attorney's fees and the costs of this litigation.

## COUNT I

**For Violation of the New Mexico Fair Pay for Women Act,**
**NMSA 2016, Section 28-23-1, *et seq*.,**
**(Plaintiff v. Defendants State of New Mexico,**
**The Office of the Governor, DFA, RMD and NMERB)**

42.     Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

43.     Section 3 of the New Mexico Fair Pay for Women Act (the "Act") provides:

26

A.     No employer shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions, except [no exceptions apply]...

(*Damages for a violation of this statute include actual and treble damages. See* Section 6(A)(3))

The Act's definition of "employer" extends to the State of New Mexico and its agencies.  *See Wolinsky v. New Mexico Corrections Department*, 429 P. 3d 991, 2018 NMCA 71.

44.     **Mr. Moise was deliberately paid at least $100,000.00 per year more than Ms. Goodwin for equal work, in violation of the statute, and such disparity was intentionally never corrected by these Defendants, despite their having clear notice of the illegal disparity.**

45.     As a direct consequence of the illegal misconduct described above, Plaintiff has suffered irreparable harm and damage, to include, but not limited to, loss of income, loss of the use of all unpaid income, loss of PERA retirement benefits, emotional distress and all other recoverable damages, including pre- and post-judgment interest, statutory attorney's fees and the costs of this litigation.

46.     Accordingly, Defendants State of New Mexico, The Office of the Governor, DFA, RMD and NMERB (whether acting independently and/or on behalf of and/or at the direction of the State of New Mexico and/or its Governor) must insure the full compensation of Plaintiff, pursuant to the terms of the Act, for all resultant financial consequences of the disparity, together with treble those damages and Plaintiff's costs and attorneys' fees incurred in the pursuit of this action.

27

**WHEREFORE**, on Count I, Plaintiff requests that judgment be entered against Defendant State of New Mexico, Defendant The Office of the Governor, Defendant DFA, Defendant RMD and Defendant NMERB, jointly and/or severally, awarding her statutory damages, including treble damages (treble Plaintiff's actual and compensatory damages), together with pre-judgment interest, post-judgment interest, costs, statutory attorneys' fees and such other and further relief as is legally available.

## COUNT II

### For Violation of the Equal Pay Act of 1963, 29 U.S.C., Section 206(d)
### (Plaintiff v. Defendants State of New Mexico,
### The Office of the Governor, DFA, RMD and NMERB)

47.     Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

48.     Section 206(d) of the Equal Pay Act of 1963 provides:

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except [no exceptions apply]....

49.     As already stated, Mr. Moise was deliberately paid at least $100,000.00 per year more than Ms. Goodwin for equal work, in violation of the statute, and such disparity was intentionally never corrected by these Defendants, despite clear notice of same.

50.     As a direct consequence of the illegal misconduct described above, Plaintiff has suffered irreparable harm and damage, to include, but not limited to, loss of income, loss of the use

of all unpaid income, loss of PERA retirement benefits, emotional distress and all other recoverable damages, including pre- and post-judgment interest, statutory attorney's fees and the costs of this litigation.

51.     Accordingly, Defendants State of New Mexico, DFA and/or NMERB must fully insure the compensation of Plaintiff, pursuant to the terms of the Equal Pay Act, for all resultant financial consequences of the disparity and for Plaintiff's costs and attorneys' fees.

**WHEREFORE**, on Count II, Plaintiff requests that judgment be entered against Defendants State of New Mexico, The Office of the Governor, DFA, RMD and NMERB, jointly and/or severally, awarding her statutory damages, together with pre-judgment interest, post-judgment interest, costs, statutory attorneys' fees and such other and further relief as is legally available.

### COUNT III

**Gender and/or Race Discrimination and Illegal Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended;
and the Civil Rights Act of 1991, 42 U.S.C. § 1981a
(Plaintiff v. All Defendants, including Yet-to-be-identified Co-Conspirators)**

52.     Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

53.     The above-described misconduct conduct perpetrated by the Defendants constitutes age, gender and/or race discrimination, and/or retaliation for Plaintiff's protected complaints, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), as amended ("Title VII of the Civil Rights Act") and the Civil Rights Act of 1991. Defendant Governor Lujan Grisham and all other individual Defendants, at all times relevant herein, were and still are acting under color of state law. All Defendants are therefore jointly and/or severally liable to Plaintiff for all of her

federal civil rights statutory remedies, including for Plaintiff's actual, consequential and punitive damages and attorneys' fees.

54.     Defendants wrongfully and unlawfully discriminated against Plaintiff, a Caucasian woman over 40 years of age, by failing to equally compensate her for the work performed by her which was equal to that of her more-fairly-compensated male peer, Steven Moise.

55.     Because Defendants' ongoing and systemic discrimination and retaliation against Plaintiff violated, and continued to violate, Plaintiff's rights under Title VII of the Civil Rights Act (and the Civil Rights Act of 1991),  Defendants are therefore jointly and/or severally liable to Plaintiff for all of her statutory remedies, including actual, consequential and punitive damages and attorneys' fees.  (The Lilly Ledbetter Fair Pay Act of 2009, 111th Congress Public Law 2, permits Plaintiff to recover from Defendants all income not paid to her since the commencement of the disparity alleged in this Complaint.)

56.     As a direct result of the aforesaid misconduct by the Defendants, Plaintiff has suffered and will continue to suffer embarrassment, humiliation and loss of income and other damages.  Further, as a direct result of the aforesaid misconduct of the Defendants, Plaintiff has been constructively discharged from her employment with the State of New Mexico, has been forced to leave New Mexico, her state of residence, to obtain employment in another state offering equal pay for equal work, has been prevented from obtaining the full enjoyment of life and has sustained loss of earnings, loss of retirement benefits and will continue to incur these and other related damages.

57.     The conduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Plaintiff's

rights and feelings, knowing that their actions or inactions would cause Plaintiff to suffer economic loss and severe and extreme emotional distress, thereby entitling Plaintiff to an additional award of punitive damages to punish Defendants and to deter the State of New Mexico and its Governor(s) and its agency heads (such as Defendant Romero) and any other individual co-conspirators from considering similar reprehensible and illegal misconduct.

58.     Notices of Right to Sue were issued by the United States Department of Justice on April 06, 2021, and on May 14, 2021.  *See* **Exhibits J** and **K** attached hereto and incorporated herein.

**WHEREFORE**, on Count III, Plaintiff requests that judgment be entered against Defendants, jointly and/or severally, awarding her compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

### COUNT IV

**Violation of The Lilly Ledbetter Fair Pay Act of 2009,
111th Congress Public Law 2
(Plaintiff v. Defendants State of New Mexico,
The Office of the Governor, DFA, RMD and NMERB)**

59.     Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

60.     The Lilly Ledbetter Fair Pay Act of 2009, 111th Congress Public Law 2, permits Plaintiff to recover from these Defendants all income (and associated loss of benefits and accrued interest) not paid to her since the commencement of the disparity alleged in this Complaint.

61.     This pay disparity began with the commencement of her employment with the State of New Mexico in 2008 and has existed continuously up to the constructive termination of her

employment in 2021; and therefore, Plaintiff is entitled to be compensated by one or more or all of these Defendants, jointly and/or severally, for the full amount of the disparity accumulated since the commencement of her employment as Executive Director of NMERB, to include compensation for all concomitant loss of benefits and accrued interest for the loss of use of such funds, up to and including the date of her termination from employment in 2021, together with statutory attorneys' fees and all associated costs incurred by Plaintiff in rectifying this illegal pay disparity.

62.    The conduct of these Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Plaintiff's rights and feelings, knowing that their actions or inactions would cause Plaintiff to suffer economic loss and severe and extreme emotional distress, thereby entitling Plaintiff to an additional award of punitive damages to punish these Defendants and to deter the State of New Mexico and its Governor(s) and its agency heads (such as Defendant Romero) and any other individual co-conspirators from considering similar reprehensible and illegal misconduct.

**WHEREFORE**, on Count IV, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding her compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and  further relief as is legally available.

### COUNT V

**Age Discrimination in Violation of**
**The Age Discrimination in Employment Act of 1967**
**(Plaintiff v. Defendants State of New Mexico,**
**The Office of the Governor, DFA, RMD and NMERB)**

63.    Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

64.     The Age Discrimination in Employment Act of 1967, 29 U.S.C., Section 621, *et seq.*, prohibits discrimination in the workplace because of age (over 40).

65.     Defendants, by their acts and/or omissions as described above, did so discriminate, in whole or in part, against Plaintiff because she was an older woman (over the age of 40 years old).

66.     Such discrimination resulted in the harm and damage described above, and these Defendants are  therefore liable to Plaintiff therefor and for all of her statutory remedies, to include, but not limited to, an award of her attorneys' fees and costs.

67.     The conduct of these Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Plaintiff's rights and feelings, knowing that their actions or inactions would cause Plaintiff to suffer economic loss and severe and extreme emotional distress, thereby entitling Plaintiff to an additional award of punitive damages to punish these Defendants and to deter the State of New Mexico and DFA from considering similar reprehensible and illegal misconduct.

**WHEREFORE**, on Count V, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding her compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

### COUNT VI

**Age, Gender and Race Discrimination and Retaliation in Violation of the New Mexico Human Rights Act, NMSA §28-1-7, *et seq*. (Plaintiff v. All Defendants)**

68.     Plaintiff incorporates and re-alleges all allegations of this Complaint as if fully set forth herein.

69.     The New Mexico Human Rights Act, NMSA §28-1-7, *et seq*., makes it an unlawful and discriminatory practice for an employer and its supervisory employees to discriminate in the terms and conditions or privileges of employment because of a person's age, race and/or sex and/or to retaliate against an employee who has made a protected complaint, either individually or through others.

70.     The Defendants had a duty by law not to discriminate against Plaintiff because of her age (over 40) and/or sex (female) and/or race (Caucasian) nor to retaliated against Plaintiff for protected complaints advanced on her behalf.

71.     The Defendants violated this duty, as well as NMSA 1978, §28-1-7, *et seq*., by their aforementioned actions and inactions which created and perpetuated a subliminally toxic and hostile age-discriminating, race-discriminating and gender-discriminating work environment by denying Plaintiff pay and benefits equal to those of her male counterpart, Steven Moise, and by failing to correct such disparity, in part, because of retaliation against Plaintiff for having protected complaints made on her behalf.  At all times referenced herein, the individual Defendants were acting under color of state law.

72.     As a direct result of the aforesaid misconduct of the Defendants, Plaintiff has suffered and will continue to suffer economic loss, embarrassment, emotional distress and suffering, humiliation, loss of her employment in her home state and other consequential damages.  Further, as a direct result of the aforesaid misconduct of the Defendants, Plaintiff has sustained a significant loss of earnings and associated damages and will continue to incur such loss into the future.

73.     The misconduct of the Defendants set forth above was intentional, willful, malicious, reckless, wanton and/or grossly negligent and was undertaken with a total disregard for Plaintiff's

rights and feelings, knowing that their actions or inactions would cause Plaintiff to suffer economic

loss and emotional distress, thereby entitling Plaintiff to an additional award of punitive damages

to punish Defendants and to deter the Governor of the State of New Mexico and the other individual

Defendants from considering the commission of similar reprehensible and illegal misconduct in the

future.

WHEREFORE, on Count VI, Plaintiff requests that judgment be entered against

Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages where

applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and

such other and further relief as is legally available.

## COUNT VII

### Age, Gender and Race Discrimination, Retaliation and Deprivation of Federal and State Rights in Violation of The Civil Rights Act of 1871, Title 42 of The United States Code, Sections 1981a and 1983 (Plaintiff v. All Individual Defendants)

74.     Plaintiff incorporates in this Count all of the allegations made throughout this

Complaint as if fully set forth herein.

75.     The individual Defendants (and/or other yet-to-be-identified individuals) engaged

in unlawful and intentional age, gender and/or race discrimination and/or illegal retaliation

prohibited under 42 U.S.C., Sections 1981a, 1983 and 2000e-2 or 2000e-3, with malice or reckless

indifference to the federally protected rights of Plaintiff.  In addition, such discrimination violated

Plaintiff's rights granted to her pursuant to the Due Process and Equal Protection Clauses of the

Fourteenth Amendment to the United States Constitution.

76.     These individual Defendants (and/or other yet-to-be-identified enabler(s) or co-

conspirator(s)) perpetrated such misconduct while acting under color of state law and, in doing so,

35

have deprived Plaintiff of her rights, privileges and/or immunities secured by the United States and New Mexico Constitutions and federal and state laws, including, but not limited to, the federal and state statutes cited herein and the due process and equal protection clauses of the United States and New Mexico Constitutions.

77.     Such violations of 42 U.S.C., Sections 1981a and 1983, have caused Plaintiff to suffer irreparable damage and harm as is described herein, above and below, thus causing these Defendants to be jointly and/or severally liable to Plaintiff for all such resulting harm and damage, entitling the Plaintiff to recover from these Defendants, individually, jointly and/or severally, compensatory and punitive damages.

**WHEREFORE**, on Count VII, Plaintiff requests that judgment be entered against all individual Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

## COUNT VIII

**Violations of the Due Process and Equal Protection Clauses of the
Fourteenth Amendment to the United States Constitution
(Plaintiff v. Defendants State of New Mexico,
The Office of the Governor, DFA, RMD and NMERB
and Yet-to-be-identified Co-Conspirators)**

78.     Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

79.     The Fourteenth Amendment to the United States Constitution prohibits states from denying its citizens due process or equal protection of the laws.

36

80.     In the instant case, the State of New Mexico and/or The Office of the Governor and/or DFA and/or RMD and/or NMERB and/or Yet-to-be-identified Co-conspirators have deliberately and illegally deprived Plaintiff of due process (failure to permit her to be paid equal pay as received by men for Plaintiff's equal work, notwithstanding the NMERB's attempt to equalize her pay) and equal protection of the laws (failure to provide her with compensation equal to her male counterpart, Steve Moise), which deprivations have caused Plaintiff to suffer the harm described herein.

81.     Accordingly, the State of New Mexico, DFA, RMD, NMERB and/or Yet-to-be-identified Co-conspirators are liable to Plaintiff for all damages she has sustained for this violation of her federal constitutional rights.

**WHEREFORE**, on Count VIII, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

### COUNT IX

**Violations of the Due Process, Equal Protection and Sex Discrimination
Clauses of the New Mexico Constitution Art. II, § 18
(Plaintiff v. Defendants State of New Mexico,
The Office of the Governor, DFA, RMD and NMERB
and Yet-to-be-identified Co-Conspirators)**

82.     Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

37

83.     Article II, Section 18, of the New Mexico Constitution prohibits states from denying its citizens due process or equal protection of the laws, to include the prohibition of sex, age and other discrimination.

84.     In the instant case, the State of New Mexico, The Office of the Governor, DFA, RMD and NMERB and Yet-to-be-identified Co-Conspirators have deliberately deprived Plaintiff of due process (failure to permit her to be paid equal pay as received by men for Plaintiff's equal work, notwithstanding the NMERB's attempt to equalize her pay) and equal protection of the laws (failure to provide her with compensation equal to her male counterpart, Steve Moise) guaranteed to Plaintiff under the New Mexico Constitution, as well as discriminated against her in such effort based upon her sex and age (older woman), and such misconduct has caused Plaintiff to suffer the harm and damage described herein.

85.     Accordingly, the State of New Mexico, The Office of the Governor, DFA, RMD, NMERB and Yet-to-be-identified Co-Conspirators, while acting under color of state law, have violated the New Mexico Constitution and are therefore jointly and/or severally liable to Plaintiff for all damages she has sustained for this violation of her state constitutional rights.

**WHEREFORE**, on Count IX, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

**COUNT X**

**Violations of the New Mexico Whistleblower Protection Act,
NMSA 1978, Section 10-16c-1, *et seq*.
(Plaintiff v. Defendants State of New Mexico,
The Office of the Governor, DFA, RMD and NMERB)**

86.    Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

87.    The New Mexico Whistleblower Protection Act, NMSA 1978, Section 10-16C-1, *et seq.*, at Section 10-16C-3 provides, in part:

Section 10-16C-3. Public employee retaliation action prohibited.

A public employer shall not take any retaliatory action against a public employee because the public employee:

A.    communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act.

88.    The Plaintiff communicated to the State of New Mexico, the Office of the Governor, Defendant Romero, the DFA, RMD and to the NMERB, via one or more state employee(s), including the individual Defendants acting under color of state law, the information set forth in this Complaint about the discriminatory and other illegal acts and failures to act of the named Defendants described herein and of other yet-to-be-identified complicit state employees, which acts and/or failures to act the Plaintiff believed in good faith to be unlawful and/or improper, to include but not limited to, Defendants' failures to respond to the numerous reportings of the unlawful pay disparity being perpetrated against Plaintiff because of the Defendants' illegal failure to afford her equal pay for equal work, including a chain-of command conspiracy to commit same.

39

89. These Defendants who are identified to be public employers, either individually or in concert with one or more of the other Defendants and/or with other state employees or agencies (Yet-to-be-identified Co-Conspirators), failed to act to protect the Plaintiff from further income loss in response to the Plaintiff's communications, either made individually through other State officials, to include Mr. Moise or the members of the NMERB Board of Trustees, regarding the Defendants' respective illegal acts and failures to act described through this complaint, in direction violation of the New Mexico Whistleblower Protection Act.

90. Such failures to act perpetrated by each and every complicit "public-employer" Defendant have caused the Plaintiff to suffer additional emotional distress and other harm, economic loss, denial or disruption of her employment advancement, constructive termination of her employment, loss of back and front pay, loss of benefits and other actual and consequential damage, and all Defendants are therefore jointly and/or severally liable to Plaintiff for same.

91. All of the individual Defendants, jointly and/or severally, while acting under color of state law, perpetrated said illegal misconduct on behalf of their respective "employers" intentionally, willfully, wantonly and/or with reckless disregard for the Plaintiff's rights and feelings, thereby rendering the individual Defendants, pursuant to 42 U.S.C., Sections 1981a and 1983, jointly and/or severally liable to the Plaintiff for an additional award of punitive damages.

**WHEREFORE** on Count X, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

## COUNT XI

### Breach of Employment Contact
### (Plaintiff v. Defendants State of New Mexico,
### The Office of the Governor, DFA, RMD and NMERB)

92.     Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

93.     These Defendants, by and through each other and/or by and through other named and complicit Defendants and their perpetration of the aforesaid misconduct against the Plaintiff as is set forth above, breached the covenant of good faith and fair dealing implied in Plaintiff's contract of employment with the State of New Mexico (and/or with NMERB) which was authorized by Defendants The Office of the Governor, DFA, RMD and/or NMERB, thus causing the Plaintiff to suffer emotional distress and other harm, economic loss, constructive termination of her employment, loss of back and front pay, loss of benefits and other actual and consequential damage, and these Defendants are liable to the Plaintiff therefor.

**WHEREFORE** on Count XI, Plaintiff requests that judgment be entered against these Defendants, jointly and/or severally, awarding Plaintiff compensatory and punitive damages where applicable, together with pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief as is legally available.

## COUNT XII

### Intentional Interference With Employment Contract
### (Plaintiff v. Defendants State of New Mexico, Lujan-Grisham, Romero, Tyndall,
### DFA, RMD and NMERB and Yet-to-be-identified Co-Conspirators)

94.     Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

41

95.     Each and/or all of these named Defendants owed Plaintiff a duty not to interfere with Plaintiff's contract of employment with the State of New Mexico and/or NMERB.

96.     One or more or all of these Defendants breached said duty owed to Plaintiff by engaging in the acts and/or omissions set forth in this Complaint individually and while acting under color of state law, thus rendering one or more or all of them liable to Plaintiff, jointly and/or severally, for all consequent harm suffered by Plaintiff.

97.     One or more or all of these Defendants perpetrated said misconduct intentionally, willfully, wantonly and/or with reckless disregard for the Plaintiff's rights and feelings, therefore rendering these Defendant(s) jointly and/or severally liable to the Plaintiff for an additional award of punitive damages.

**WHEREFORE** on Count XII, the Plaintiff prays that judgment be entered against these Defendants, jointly and/or severally, in an amount to be determined by the jury, for costs, back pay, interest, punitive damages and statutory attorneys' fees where applicable and for such other and further relief as is legally available.

## COUNT XIII

### Intentional Infliction of Emotional Distress
### (Plaintiff v. Defendants State of New Mexico, DFA, RMD, NMERB, Lujan-Grisham, Romero, Tyndall and Yet-to-be-identified Co-Conspirators )

98.     Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

99.     By and through the acts and/or omissions described above, one, more and/or all of these Defendant(s), individually or in conspiracy with one or more of each other, intended to and

did, in fact, inflict upon Plaintiff severe and extreme emotional distress, for which harm all such culpable Defendant(s) are jointly and/or severally liable to Plaintiff for all of her consequent harm.

100.    One or more or all of these Defendant(s) perpetrated said infliction intentionally, willfully, wantonly and/or with reckless disregard for the Plaintiff's rights and feelings, therefore rendering the culpable Defendant(s) jointly and/or severally liable to the Plaintiff for an additional award of punitive damages.

**WHEREFORE** on Count XIII, the Plaintiff prays that judgment be entered against these Defendants, jointly and/or severally, in an amount to be determined by the jury, for costs, back pay, interest, punitive damages and statutory attorneys' fees where applicable and for such other and further relief as is legally available.

**COUNT XIV**

**Negligent/Reckless/Intentional Breach(es) of Fiduciary and Other Duties /
Promissory Estoppel
(Plaintiff v. All Individual Defendants)**

101.    Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

102.    One or more or all of the individual Defendant(s) took an oath when assuming their respective offices (Oath of Officer) which is required by the New Mexico Constitution:  "Every person elected or appointed to any office shall, before entering upon his [her] duties take and subscribe to an oath or affirmation that he [she] will support the constitution of the United States and the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his [her] ability."  The Constitution of the State of New Mexico, Article XX, Section 1.

103.    Such oath was taken by the Governor of the State of New Mexico (Michelle Lujan Grisham) and likely by all individual Defendants when assuming their respective offices, thus creating a fiduciary (or other lawful) duty (to act in the best interest of the citizens of a state - the "duty" to "support the constitution of the United States and the constitution and laws of [New Mexico" and to "faithfully and impartially discharge [such] duties") owed by each of these Defendants to all citizens of the State of New Mexico, to include Plaintiff herein, to, among other obligations, support and follow the constitution of the United States and the constitution and laws of the State of New Mexico, to include those specific obligations cited throughout this Complaint; yet, as described herein above and below, these individual Defendants, while acting under color of state law in their respective offices, negligently, recklessly and/or intentionally breached such fiduciary duty (and any other duty) owed to Plaintiff and to the citizens of our state by committing the violations cited throughout this Complaint, thus proximately causing harm and injury to Plaintiff and to all New Mexicans, for which harm and injury they are liable to Plaintiff herein.

104.    Even if a Defendant did not take said oath to assume his or her office, nevertheless implied in their assumption of state office and state employment was his or her knowing acceptance of and obligation to comply with and fulfill the duty prescribed by said oath, which duty he or she owed to all citizens of Mew Mexico, including Plaintiff herein.

105.    Such oath of office (and/or the act of assuming office) also constituted a promise made by the individual Defendants to Plaintiff to uphold such duty owed to the citizens of New Mexico, upon which Plaintiff duly relied while engaging in her service to our state, to her ultimate detriment when such promise was breached by the Defendants as has been described hereinabove.

Defendants are thereby estopped  from claiming otherwise and are therefore liable to Plaintiff for all of the above-described harm she has suffered as a result of such breach(es) of duty and promise.

106.   One or more or all of these Defendant(s) perpetrated said harm intentionally, willfully, wantonly and/or with reckless disregard for the Plaintiff's rights and feelings while acting under color of state law, therefore rendering all of the culpable Defendant(s) jointly and/or severally liable to the Plaintiff for an additional award of punitive damages.

**WHEREFORE** on Count XIV, the Plaintiff prays that judgment be entered against these Defendants, jointly and/or severally, in an amount to be determined by the jury, for costs, back pay, interest, punitive damages and statutory attorneys' fees where applicable and for such other and further relief as is legally available.

## COUNT XV

### Civil Conspiracy
### (Plaintiff v. All Defendants)

107.   Plaintiff incorporates and re-alleges in this Count all of the allegations made throughout this Complaint as if fully set forth herein.

108.   One or more or all of these Defendant(s) conspired with one or more of the other of these Defendant(s) to discriminate against Plaintiff in the terms and conditions of Plaintiff's employment and to otherwise inflict harm upon Plaintiff via the tortious misconduct described hereinabove.

109.   Such conspiracy has caused Plaintiff to suffer emotional distress and financial harm, for which all of the culpable Defendant(s) are jointly and/or severally liable.

110.   One or more or all of these complicit Defendant(s) perpetrated said conspiracy intentionally, willfully, wantonly and/or with reckless disregard for the Plaintiff's rights and

feelings, therefore rendering such Defendant(s) jointly and/or severally liable to the Plaintiff for an additional award of punitive damages.

**WHEREFORE**, on Count XV, the Plaintiff prays that judgment be entered against these Defendants, jointly and/or severally, in an amount to be determined by the jury, for costs, back pay, interest, punitive damages where applicable and statutory attorneys' fees and for such other and further relief as is legally available.

## JURY DEMAND

Plaintiff hereby demands that all issues be tried to a jury of six (6) persons.

Respectfully submitted,

THE BENNETT LAW GROUP, LLC

By: _____
Merit Bennett, *Esq*.
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Ph: 505-983-9834 | Fax: 505-983-9836
Email: mb@thebennettlawgroup.com
*Attorney for Plaintiff Jan H.C. Goodwin*