**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAN H. C. GOODWIN,

      Plaintiff,

v.                                      No. 1:21-cv-00483-JHR-KK

MICHELLE LUJAN GRISHAM, *individually and as Governor of the State of New Mexico;* STATE OF NEW MEXICO; STATE OF NEW MEXICO OFFICE OF THE GOVERNOR; STATE OF NEW MEXICO DEPARTMENT OF FINANCE AND ADMINISTRATION ("*DFA*"); DEBORAH K. ROMERO, *individually and as Cabinet Secretary of DFA;* STATE OF NEW MEXICO RISK MANAGEMENT DIVISION ("*RMD*"); MARK TYNDALL, *individually and as Director of RMD;* STATE OF NEW MEXICO EDUCATIONAL RETIREMENT BOARD ("*ERB*"); RUSSELL GOFF, LARRY MAGID, MARY LOU CAMERON, DONALD DUSZYNSKI, RYAN STEWART, ADAN DELGADO, TIM EICHENBERG, and STEPHANIE M. RODRIGUEZ, *individually and as Trustees of the ERB;* STEVEN GLUCKSTERN, *individually and as former Trustee of the ERB;* and UNIDENTIFIED INDIVIDUALS,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY AND DEFENDANTS' MOTIONS TO DISMISS**</u>

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6),  [Docs. 73, 74], and Plaintiff Jan H.C. Goodwin's Motion for Leave to File Surreply [Doc. 88].  Having considered the briefing and relevant law, the Court grants the Motions to Dismiss on all counts and denies Goodwin's Motion for Leave.

I.   **INTRODUCTION**

The Court's opinion in this matter is fundamentally about what it takes to state viable claims under several New Mexican and federal laws intended to protect employees from wrongful discrimination and retaliation by their employers.  The plaintiff in this case was a top official in a New Mexico state agency who, by all accounts, worked to ensure that educators across the State, and her staff, received appropriate benefits and compensation from the state government.  The Board which ran her agency voted several times to increase Plaintiff's salary, but others in state government prevented raises from being implemented.  This conflict produced ongoing state court litigation in which the agency and the Governor appear to be wrangling for control of the agency's budget.  Caught up in a fight she did not ask for, and denied raises for years, Plaintiff resigned and now sues virtually everyone involved for gendered, racial, and age-based discrimination; retaliation against her for reporting that discrimination; and several contract and tort claims.  Defendants move to dismiss, arguing that they are immune to some claims and that Plaintiff does not allege facts sufficient to make a case on the others.

The Court grants Defendants' motions on all counts.  Goodwin alleges facts which, if true, show that she bore the brunt of decisions by the Governor of New Mexico and the Department of Finance and Administration, but not that any of the Defendants violated laws against discrimination or retaliation, nor that they are liable to her in tort or contract.  Even if some or all the Defendants wronged Goodwin morally, this Court has jurisdiction only where plaintiffs plausibly allege legal injury.  The Court thus dismisses Goodwin's Second Amended Complaint.

II.     **BACKGROUND AND PROCEDURAL HISTORY**

This case arose from disputes within New Mexico's state government over the salary of Plaintiff Jan Goodwin, former Director of the New Mexico Educational Retirement Board.  The main institutional players in this dispute are the Educational Retirement Board, the Office of the Governor, and the Department of Finance and Administration.  Their roles in this story require explication.

The Educational Retirement Board ("ERB") is a department of New Mexico government dedicated to enforcement of the Educational Retirement Act and to the creation, maintenance, and disbursal of New Mexico's educational retirement fund.  *See* N.M.S.A. 1978 § 22-11-1 *et seq.*  The Board is made up of several members, or "Trustees," who have the power to invest the fund and to hire a Director to handle overall administration of the ERB and its employees.  *Id.* at §§ 22-11-3 (describing the Board); 22-11-7 (creating the Director); 22-11-13 (vesting investment powers and duties in the Board).  The fund itself provides benefits for retired and disabled public educators across the State and is separate from the fund for other public employees.  *See id.* at §§ 22-11-16 (excluding members from other retirement programs).  Disbursements from the fund require the cooperation of New Mexico's Department of Finance and Administration ("DFA"), which generally oversees and administers the rest of New Mexico's public finances.  *See id.* at §§ 9-6-3 (establishing the DFA); 22-11-12 (requiring disbursements to go through the DFA).

Since 2014, the ERB has had conflicts with the Office of the Governor and the DFA over the ERB's authority to set salaries for its employees, including its Director.  Goodwin was appointed ERB Director in 2008.  [Doc. 70, p. 7].  Starting in 2014, the ERB's Trustees voted several times to increase Goodwin's salary.  *Id.* at 11.  Each attempt was thwarted because

Goodwin's pay checks were issued by the DFA, which was ordered by then-Governor Susana Martinez not to give Goodwin the raise.[1]  *Id.*  As the ERB continued voting to increase Goodwin's salary and it was repeatedly blocked, ERB Chairperson Mary Lou Cameron told the Governor's Office that its opposition was unfair.  *Id.* at 12.  Cameron compared Goodwin's job to that of Steven Moise, Director of the State Investment Council, who was paid significantly more than Goodwin since he began in 2010.  *Id.* at 9, 12.  In 2020, after more ERB votes and denials by the DFA, the ERB's lawyer informed counsel to new Governor Michelle Lujan Grisham that the ERB believed it was both illegal and poor policy for the governor and the DFA to block raises duly approved by the Trustees.  *Id.* at 14.  Governor Grisham and the DFA still refused to increase Goodwin's salary according to the past ERB votes, so the ERB sued in state court and won a declaratory judgment in its favor.  *Id.* at 21.  That judgment is now on appeal before the New Mexico Court of Appeals.  In 2021, Goodwin left the ERB and took a higher-paying job while state court litigation was ongoing.  *Id.* at 19.

Goodwin filed this suit in May 2021.  [Doc. 1].  The Defendants sorted themselves into two broadly aligned groups for purposes of representation.  The State of New Mexico, Governor Lujan Grisham and the Office of the Governor, the DFA and its Cabinet Secretary Deborah K. Romero, and the Risk Management Division and its Director Mark Tyndall are represented by the same counsel and will be called the "State Defendants."  *See* [Docs. 9–11].  Meanwhile, the ERB and its Trustees are represented separately and called the "ERB Defendants."  *See* [Doc. 13].  Goodwin also named one or more "Doe" Defendants who are still unnamed.  *See*

---

[1] Governor Lujan Grisham, upon succeeding Governor Martinez, approved a five-percent salary increase for Goodwin corresponding to the ERB's then-most recent vote, but Governor Lujan Grisham did not retroactively approve past raises.  [Doc. 70, p. 13].

[Doc. 70, p. 1].  Goodwin alleges that each Defendant is liable for one or more claims stated in her Second Amended Complaint.[2]

In August 2022, ERB and State Defendants filed separate motions to dismiss Goodwin's case for failure to state claims for relief in her Second Amended Complaint.  [Docs. 71, 74]. Goodwin timely responded to both, *see* [Docs. 77, 78], and Defendants replied.  [Docs. 80, 85]. Goodwin then moved for leave to file a surreply, arguing that the ERB reply raised novel arguments.  [Doc. 88].  ERB Defendants timely responded, [Doc. 89], and Goodwin replied, completing briefing.  [Doc. 90].

## III.    MOTION FOR LEAVE TO FILE SURREPLY DENIED

As a preliminary matter, the Court addresses Goodwin's Motion for Leave to File a Surreply, [Doc. 88].  In her motion, Goodwin states that the ERB Defendants argue for the first time in their reply that the exhibits attached to Goodwin's Response should be struck "and also attack[] her argument pursuant to case law."  *Id.* at 1.  She does not state that she sought concurrence of opposing counsel before filing her motion for leave, *see id.*, and confirms in her reply that she did not seek concurrence.  [Doc. 90, p. 1].  ERB Defendants oppose the motion and ask the Court to deny leave.  [Doc. 89].

The Court denies Goodwin leave to file her surreply for three reasons.  First, Goodwin did not seek concurrence of opposing counsel before filing her motion.  A "[m]ovant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."  D.N.M.LR-Civ. 7.1(a).  Second, the Court has opted not to strike the exhibits attached to Goodwin's filings, so a surreply addressing the argument that they should be struck would be moot.  Third, the proposed surreply attached to

---

[2] Goodwin amended her complaint the first time in July 2021 to add two ERB Trustees as defendants, *see* [Doc. 8], then amended a second time to clarify against whom each Count was alleged.  *See* [Doc. 66].

Goodwin's Motion for Leave suggests that she intended to use the surreply not merely to address a new issue raised for the first time in the ERB Defendants' reply, but to reargue the issue of the appropriate "establishment" for her claims under the Fair Pay for Women Act and the Equal Pay Act. *See* [Doc. 88, Exh. A].  Surreplies should generally be restricted in scope to issues newly raised in the other party's reply briefing and not be redundant of past briefing. *See Lynn v. Gen. Elec. Co.*, 03-cv-02662-KHV, 2006 WL 14564 at *1 (D. Kan. Jan. 3, 2006) (unpublished) (denying leave to file a surreply because the brief went "well beyond the scope of [the] particular issue" movant asked to argue in his motion for leave); *Matter of Bruce Oakley, Inc.*, 19-cv-00184-SLP, 2020 WL 1172700 at *1 n.1 (E.D. Okla. Mar. 11, 2020) (unpublished) (denying leave to file a surreply because "the matters addressed by [movant] in its proposed Sur-Reply . . . either fall outside the scope of the issues raised by [opposing party's] Motion to Dismiss or are redundant of issues addressed by [movant's] response brief").  Leave is thus denied and the Court will not consider the arguments raised in Goodwin's proposed surreply.

## IV.   LEGAL STANDARDS FOR MOTIONS TO DISMISS

On motion by a party, courts must dismiss complaints for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering 12(b)(6) motions, courts must accept all well-pleaded allegations in the complaint as true, viewing them in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009).  To prevail against the motion, the plaintiff's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is not enough to plead facts "'merely consistent with' a defendant's liability[.]" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

(2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and must be dismissed.  *Iqbal*, 556 U.S. at 678.

## V.   ARGUMENTS AND ANALYSIS

Defendants move for dismissal on several grounds.  The Court first addresses whether claims against the State of New Mexico should be dismissed on all counts because the State is not a proper party defendant.  The Court then considers whether to dismiss specific counts based on immunities and whether Goodwin states plausible claims.

### a.   *Dismissal of All Claims against the State of New Mexico*

#### i.   Parties' Arguments

State Defendants argue that the State of New Mexico is not a valid party-defendant to Goodwin's claims.  [Doc. 74, p. 5].  They rely on a New Mexico Court of Appeals case to assert that plaintiffs with claims against the State must name the specific agency or employee alleged to have caused harm, not the State itself.  *Id.* (citing *Begay v. State*, 1985-NMCA-117 ¶ 9, 723 P.2d 252, 255–56, *rev'd on other grounds*, *Smialek v. Begay*, 1986-NMSC-049, 721 P.2d 1306).  Goodwin seems to argue that the rule of that case applies only to actions under the New Mexico Tort Claims Act, consistent with the cause of action in *Begay*.  [Doc. 78, pp. 6–8].  New Mexico's sovereign immunity from state law claims, she points out, is established by statute, and exists only when "expressly invoked by the State Legislature."  *Id.* at 7.  Because the New Mexico Human Rights Act does not expressly immunize the State and does not require plaintiffs to sue under the Tort Claims Act, Goodwin argues her claims under the Human Rights Act as well as the federal Civil Rights Act of 1964 may be brought against the State directly.  *Id.* Therefore, she says, the State of New Mexico is a proper party-defendant.  *Id.* at 8.  Goodwin

does not provide a reason why she may name the State of New Mexico as party-defendant for her other claims.  *See id.* at 6–8.

      ii.  <u>Relevant Law</u>

New Mexico retained common law sovereign immunity until 1975 when the New Mexico Supreme Court abolished it.  *See Ricks v. State*, 1975-NMSC-56 ¶ 9, 544 P.2d 1153, 1155–56.  Sovereign immunity from state law claims was statutorily revived by the Tort Claims Act, which generally immunizes the State from suit, but leaves State agencies and actors open to certain enumerated claims.  *See* N.M.S.A. 1978 § 41-4-4(A); *see also Begay*, 1985-NMCA-117 ¶ 8, 723 P.2d at 255 (describing the judicial abolition and legislative reinstatement of sovereign immunity).  Statutory sovereign immunity in New Mexico is construed narrowly because it abrogates the post-*Ricks* common law right to recover against the State for injuries it proximately caused.  *See Methola v. Eddy Cnty.*, 1980-NMSC-145 ¶ 23, 622 P.2d 234, 238.

A plaintiff who sues under the Tort Claims Act must name a specific State agency or public employee alleged to have been responsible for the harm allegedly suffered by the plaintiff; she may not name the State itself as a party-defendant.  *Begay*, 1985-NMCA-117 ¶ 9, 723 P.2d at 255–56; *see also Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 1987-NMCA-026 ¶ 21, 734 P.2d 794, 799.  The Human Rights Act waives New Mexico's sovereign immunity and allows suits against State agencies for engaging in any "unlawful discriminatory practice[.]"  *See* N.M.S.A. 1978 §§ 28-1-2(A), (B) (defining "employer" to include "the state and all of its political subdivisions"); *Sonntag v. Shaw*, 2001-NMSC-015 ¶ 11, 22 P.2d 1188, 1193 (recognizing a cause of action under the Human Rights Act).  New Mexico state courts have not addressed, however, whether the State itself may be named as a party-defendant in Human Rights Act cases.

iii.  <u>Analysis</u>

The Court finds that the principles articulated by the New Mexico Court of Appeals in *Begay*, barring Tort Claims Act cases directly against the State, apply equally to Human Rights Act claims. The State of New Mexico thus cannot be named as a party-defendant and all claims against it must be dismissed.

New Mexico courts are pragmatic, rather than purely textualist, about what party-defendants Tort Claims Act plaintiffs may name.  The Act states that "[a] governmental entity" can be held liable for torts for which the Act waives immunity.  *See* N.M.S.A. 1978 § 41-4-4(A). A "governmental entity" is defined as "*the state* or any local public body as defined in [the Act.]"  *Id.* at § 41-4-3(B) (emphasis added).  The statute's plain language thus suggests the State of New Mexico can be named as a party-defendant, but state courts do not read it that way.  In *Begay*, the New Mexico Court of Appeals held that the State could not be named as a party-defendant because there was "no claim that the State of New Mexico did anything wrong or [had] any responsibility for the alleged harm suffered by plaintiffs."  1985-NMCA-117 ¶ 9, 723 P.2d at 256.  In *Abalos*, the Court of Appeals elaborated:

> The reasoning behind naming the particular entity rather than the state is that only the party responsible for the alleged harm should be named . . .  To force the city or state to defend an action in which it has little direct involvement would be unduly burdensome and unnecessary.  Only the particular agency involved should be named.

1987-NMCA-026 ¶ 21, 734 P.2d at 799.  New Mexico courts thus prioritize pragmatic litigation concerns (e.g., who should a plaintiff haul into court) over strict adherence to the language of the Tort Claims Act, at least to determine properly named defendants.

The same rationale applies to the Human Rights Act.  The Human Rights Act prohibits an "employer" from engaging in unlawful discriminatory practices.  N.M.S.A. 1978 § 28-1-7.  An

"employer" is "any person employing four or more persons," and a "person" includes "the state and all of its political subdivisions[.]" *Id.* at §§ 28-1-2(A), (B). The statute's language mirrors the Tort Claims Act, so state courts would presumably interpret it the same way. The same pragmatic concerns about appropriate party-defendants—that is, the importance of dealing only with those defendants who the plaintiff has clearly alleged harmed her—apply equally to Human Rights Act claims as to common law tort claims. The Court infers from this that New Mexico courts would find the State of New Mexico an inappropriate party-defendant to Human Rights Act claims just as they have in the context of the Tort Claims Act.

Goodwin's arguments to the contrary are unpersuasive. Although governmental immunity to state law claims exists only where the legislature confers it and the Human Rights Act does not expressly prohibit naming the State as party-defendant, she does not show why the *Begay* rationale for dismissing the State should not apply here the same as it would to Tort Claims Act cases. And, like in *Begay* and *Abalos*, all acts and omissions Goodwin describes in her complaint are attributed to specific officials and government offices, not the State as a whole. *See* [Doc. 70, pp. 6–18] (describing Defendants' actions). Further, although she discusses her Civil Rights Act claims, she does not explain why either the Civil Rights Act or the Human Rights Act allow her to sue the State of New Mexico directly. Finally, her failure to discuss any of her other claims in which she named the State of New Mexico as a party-defendant suggests she waives those arguments and consents to dismissing those claims against the State. All claims against the State of New Mexico as party-defendant should thus be dismissed.

b.   *Issues Specific to Particular Counts*

i.   Sexually Discriminatory Pay Differences under the New Mexico Fair Pay for Women Act and the federal Equal Pay Act (Counts I and II)

Defendants group arguments for dismissing Counts I and II together and Goodwin does not object to this framing.  *See* [Doc. 73, p. 9]; [Doc. 74, p. 5]; [Doc. 77, p. 9]; [Doc. 78, p. 8]. The claims and relevant law are virtually identical, so the Court will do the same.  Goodwin does not state a claim under either Act, so Counts I and II must be dismissed.

A.   *Parties' Arguments*

Defendants argue two reasons that Goodwin fails to state claims under the Fair Pay for Women Act ("FPWA") and the Equal Pay Act ("EPA").  To make claims under either Act, Goodwin must identify a comparable but higher-paid male employee in the same establishment as her.  [Doc. 73, p. 10]; [Doc. 74, p. 7].  First, Defendants argue that the relevant "establishment" is the Educational Retirement Board where Goodwin worked, but the primary comparator she offers is Steven Moise at the State Investment Council.  [Doc. 73, 10–11]; [Doc. 74, pp. 7–8].  Goodwin offers ERB employee Bob Jacksha as an alternative comparator, but Defendants' second argument is that neither Moise nor Jacksha performed work "substantially equal" to Goodwin's job as Director.  [Doc. 74, pp. 8–9].

Goodwin concedes that being in the "same establishment" and performing "equivalent work" are necessary elements of her claims but insists that her Second Amended Complaint properly presents them.  Goodwin argues that the relevant "establishment" is not the ERB, but the entire New Mexico state government.  [Doc. 77, pp. 12–16]; [Doc. 78, p. 9].  If true, Moise could be a proper comparator if his work is "equivalent."  Goodwin then argues not only that she and Moise performed substantially equal work, but that she performed those and many other

duties, suggesting that even equal pay would be less than fair.  [Doc. 77, pp. 16–17]; [Doc. 78, pp. 9–11].

### B.  *Relevant Law*

The EPA forbids employers from discriminating

> within any establishment . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1).[3]  The Fair Pay for Women Act uses nearly identical language, prohibiting discrimination

> within any establishment . . . between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions[.][4]

N.M.S.A. 1978 § 28-23-3(A).[5]  The Tenth Circuit Court of Appeals has analyzed the EPA and FPWA under identical criteria derived from case law interpreting the EPA, noting that the statutes are "coterminous" and that there is "a dearth of New Mexico case law discussing the FPWA[.]"  *See Burke v. New Mexico*, 696 F. App'x 325, 333 n.4 (10th Cir. 2017) (unpublished).  Because parties seem to accept this framing and New Mexico FPWA case law is still sparse today, the Court will take the same approach here.

---

[3] The EPA has exceptions to this prohibition "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]"  26 U.S.C. § 206(d)(1).  Defendants do not argue for any of these exceptions in their motions, so the Court does not consider them.  *See* [Doc. 73, pp. 9–12]; [Doc. 74, pp. 5–9].

[4] The only substantive difference between the two quoted portions is that the FPWA declines to peremptorily assign the employer a male gender.

[5] The FPWA contains exceptions identical to the EPA.  N.M.S.A. 1978 §§ 28-23-3(A)(1)–(3).  Defendants do not invoke them either.  [Doc. 73, pp. 9–12]; [Doc. 74, pp. 5–9].

Plaintiffs under the EPA (and, by extension, the FPWA) must state a prima facie case of sex-based pay discrimination to prevail. *Mickelson v. New York Life Ins.*, 460 F.3d 1304, 1311 (10th Cir. 2006). A plaintiff does this by identifying a comparator employee of the opposite sex in the establishment where she worked and showing that (1) she was performing work which was substantially equal to that of her comparator considering the skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) her comparator was paid more under those circumstances. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015), quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997). Plaintiffs do not need to prove their employer intended to discriminate based on sex to prevail. *Mickelson*, 460 F.3d at 1310–11. In the context of a motion to dismiss for failure to state a claim, plaintiffs' allegations will be taken as true for purposes of making the prima facie case and must satisfy the *Twombly-Iqbal* plausibility standard. *See Dolin v. ThyssenKrupp Elevator Corp.*, 2017 WL 1551990 at *8 (D.N.M. March 31, 2017) (unpublished).

Work is "substantially equal" when its performance "requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1); N.M.S.A. 1978 § 28-23-3(A). "This determination turns on the actual content of the job—not mere job descriptions or titles." *Riser*, 776 F.3d at 1196. Minor differences in the degree or amount of skill, effort, or responsibility needed to perform the work does not make two jobs unequal. *Id.* Jobs may even be substantially equal if they share "core functions" with each other even though the plaintiff performs additional duties beyond those of her comparator. *See id.* at 1197 ("[T]he fact that a female employee performed additional duties beyond a male comparator does not defeat the employee's prima facie case under the EPA"). That said, the "equal work" requirement is not construed broadly, and it is not

13

enough to allege merely that one's comparator performed "comparable" or "similar" work.  *See Sprague*, 129 F.3d at 1364.

### C.  *Analysis*

Assuming for now that Goodwin and Moise worked within the same "establishment" for purposes of the FPWA and EPA, Goodwin does not state a prima facie case under either statute because she does not allege facts which, if true, plausibly show that she and Moise performed substantially equal work.  Goodwin provides no description of the content of Moise's job, and reasonable inferences from statutory descriptions of the duties of the State Investment Officer appear patently different from her description of her role as ERB Director.  Counts I and II must therefore be dismissed.[6]

Although Goodwin says that Moise is the most appropriate comparator for her FPWA and EPA claims, *see* [Doc. 70, pp. 24–25], she alleges virtually no facts about the content of his job.[7]  Moise was appointed State Investment Officer by the State Investment Council in 2010.  *Id.* at 9.  Goodwin alleges that the State Investment Officer "oversees the management of investment portfolios" without specifying what that entails.  *Id.* at 10.  Goodwin proposes not only that her work as ERB Director "require[d] equal skill, effort and responsibility" compared to Moise's position but that her job was "more complex, more demanding, and overall . . . produced equal or better results for the [S]tate of New Mexico[.]"  *Id.* at 9–10.  She says Moise agrees, as do others who have compared her to Moise or said she should be paid as much as Moise.  *See id.* at 12, 14.

---

[6] Because Defendants' "equal work" argument is dispositive of Counts I and II, the Court does not address Defendants' arguments about whether Goodwin and Moise worked in the same establishment for FPWA and EPA purposes.

[7] Goodwin attaches and incorporates by reference Exhibits B, C, and D, which provide information about the functions of the State Investment Council and performance of funds it manages, presumably to show the similarities and differences between Goodwin's and Moise's work.  [Doc. 70, pp. 55–67].

Of these allegations, only the statement that Moise "oversees the management of investment portfolios" tells the Court anything about Moise's work.  Goodwin's assertion that their work required equal skill, effort, and responsibility is a conclusory statement of law which the Court cannot take as true on its own.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Others' unsupported opinions that Goodwin and Moise should be paid the same, even from Moise himself, also say nothing about the actual similarities and differences between Moise's and Goodwin's jobs.  And even accepting that the ERB and the SIC have some common functions and purposes, describing what a large organization does as a whole does not tell a reader what work the organization's leader performs.  Goodwin describes the overall operations of the SIC, but does not allege what aspects of those operations Moise participated in.  *See* [Doc. 70, pp. 55–56].  She explains that the SIC issues quarterly reports but does not allege whether Moise is involved in their drafting or preparation.  *See id.* at 56.  In the subsection titled "Executive Leadership," the only affirmative statement about what Moise does is that he "oversees a staff of approximately 24 employees."  *Id.*  From these allegations, the Court can reasonably infer almost nothing about the content Moise's work.  Without more, the Court cannot determine that Goodwin's work was substantially equal to his.

Relevant statutes and regulations also suggest Goodwin's job duties were too different from Moise's for the Court to find their work was substantially equal.  The ERB Director and the State Investment Officer have some statutory duties in common – they are both leading administrative officers in their respective offices (*compare* N.M.S.A. 1978 §§ 6-8-4(A); 22-11-7(A)) and both have authority to hire staff (*compare id.* at § 6-8-5(B); N.M.A.C. § 2.82.1.13(B)).  Chapter 6, Article 8 of the New Mexico Statutes, however, makes investing and managing public

funds central to the role of the State Investment Officer.  Article 8 transfers to him "[t]he functions, powers and duties vested by law relating to the investment or reinvestment of money and the purchase, sale or exchange of investments or securities of the permanent fund[.]" N.M.S.A. 1978 § 6-8-6.  He must "prepare a budget for administering and investing all funds managed by the investment office" (*id.* at § 6-8-5(B)); formulate and recommend "investment regulations or resolutions pertaining to the kind or nature of investments and limitations, conditions and restrictions upon the methods, practices or procedures of investment, reinvestment, purchase, sale or exchange transactions that should govern the activities of the investment office" (*id.* at § 6-8-7(B)); give "quarterly performance reports to the legislative finance committee" (*id.* at § 6-8-7(J)); and give monthly reports to the State Investment Council, including a "summary of contributions, distributions, fees, income and net gains or losses for each permanent fund and investment pool" (*id.* at § 6-8-14).

Managing and investing public money is not so unambiguously the heart of the ERB Director's duties.  The Educational Retirement Act gives investment powers to the Board itself rather than the Director.  *See id.* at §§ 22-11-13(A), (C).  The Board has adopted regulations creating an Investment Committee which directs investments of the educational retirement fund, and an Investment Division managed by a Chief Investment Officer who is overseen by, but separate from, the ERB Director.  *See* N.M.A.C. §§ 2.82.1.14; 2.82.8.9(A).  The Educational Retirement Act provides that the ERB "may utilize the services of the state investment council or the state investment officer" and that both "shall render investment advisory services to the board upon request and without expense to the board," suggesting that the ERB Director was never intended to be the ERB's chief or sole investment advisor.  *See* N.M.S.A. 1978 § 22-11-13(F).

On their face, the statutes and regulations do not suggest the ERB Director and the State Investment Officer perform substantially equal work.

Goodwin's allegations about her work as ERB Director further distinguish her position from Moise's.  Goodwin states that her job as Director was "to secure the funding for the retirement of all the public school teachers of New Mexico[.]"  [Doc. 70, p. 7].  Comparing herself to Moise, she says that she "over[saw] the management of investment portfolios" but also "performed retirement plan administration[.]"  *Id.* at 10.  Describing her duties with more detail in an exhibit attached to her Second Amended Complaint, Goodwin says she was responsible for "administration and operation of the organization, and strategic planning for improved sustainability."  *Id.* at 59.  She then lists many accomplishments, including founding and working with a group of stakeholders in the ERB to achieve legislative victories; commissioning a report to show benefit disparities between educational employees and other state employees; implementation of a third-party administrator to review disability benefits applications; implementation of sustainability and transparency policies; testifying before legislative committees on several topics; and increasing pay for ERB staff in 2018.  *See id.* at 60–62.

Goodwin's scope of work is impressive, but it is not substantially equal to Moise's.  The State Investment Officer's job is primarily to handle investment and management of public funds and to perform investment-related tasks.  Relatively few of the duties and tasks Goodwin describes plausibly suggest that she spent most of her time, or even a large percentage of it, engaged in the management and investment of ERB funds.  Rather, the duties and accomplishments described suggest that Goodwin was primarily a high-level manager who oversaw many different operations at once but who was expected to delegate most of the discrete tasks to others in her organization.  This is consistent with the overall structure of the ERB

Goodwin describes, which houses different divisions to ensure different funds are invested well and benefits are distributed properly to different constituencies.  *See id.* at 58–59.  Goodwin also alleges that a significant part of her work was legislative advocacy on behalf of the ERB and organizations which benefit from its success, but alleges no analogous duties held or tasks regularly performed by Moise.  It is true that two jobs can be substantially equal when they share a common set of core functions even if the plaintiff had additional duties.  *See Riser*, 776 F.3d at 1197.  But the allegations here suggest that Goodwin's non-investment duties made up such a large part of her regular work that her job did not share even a common set of core functions with the State Investment Officer.  Simply put, Goodwin's allegations suggest the ERB Director is a manager with some investment oversight, while the State Investment Officer is an investor with some management duties.  It follows that the skill set demanded and the pool of talent drawn from would be distinct enough to anticipate differences in compensation.  Goodwin was performing a unique job for which she alleges no substantially equal comparator.

Neither is ERB employee Bob Jacksha a valid comparator for Goodwin's EPA and FPWA claims.  First, Goodwin does not explain Jacksha's job at the ERB, but merely states some of his credentials and identifies him as Goodwin's subordinate.  [Doc. 70,  pp. 22–24].  This does not satisfy Goodwin's pleading burden.  Second, Goodwin says that she does not believe Jacksha's work was substantially equal to her own and offers him as a "comparator" only to point out that a subordinate was paid more than her.  *Id.* at 24–25.  This does not satisfy any element of a FPWA or EPA claim.[8]  Thus, to the degree that Goodwin's Second Amended Complaint may be construed as using Jacksha as a comparator for EPA and FPWA purposes, the

---

[8] It is not uncommon in New Mexico executive agencies, including the ERB and even the Office of the Governor, for specialized subordinates to have higher salaries than their chief executive officer.  *See* New Mexico Sunshine Portal, Employees Overview, Agencies, Executive (https://ssp3.sunshineportalnm.com/#employees), last accessed May 11, 2023.

Court finds the comparison insufficient.  Counts I and II of Goodwin's Second Amended Complaint are dismissed entirely.

        ii.   <u>Claim asserted under the federal Lilly Ledbetter Fair Pay Act (Count IV)</u>

Defendants move for the Court to dismiss Goodwin's claims under the Ledbetter Act because the Act does not create a cause of action.  [Doc. 73, p. 12] (citing *Jones v. Richard Cnty.*, 3:16-cv-00466, 2016 WL 11409594 at *2–3 (D.S.C. June 13, 2016)); [Doc. 74, pp. 9–10] (citing *Rodriquez-Torres v. Gov't Dev. Bank of Puerto Rico*, 704 F. Supp. 2d 81, 96 n.6 (D.P.R. 2010)).  Goodwin concedes the point in one of her responses.  [Doc. 77, p. 11].  Her briefing suggests that she raised this claim to invoke the provisions of the Equal Pay Act, as amended by the Ledbetter Act, which allow successful plaintiffs to recover damages for discriminatory employment practices dating back to when those practices began.  *See id.* at 11–12; [Doc. 78, p. 16]; *see also* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. 111-2, 123 Stat. 5.

The Act was in effect when Goodwin sued and she alleged counts under two of the four statutes amended by it, inherently invoking the Ledbetter Act's provisions.  Insofar as she alleged Count IV to invoke the Ledbetter Act, it was superfluous.  Insofar as she alleged Count IV to raise an independent cause of action, it was improper.  Count IV is dismissed entirely.

        iii.   <u>Unlawful Gendered, Racial, and Age-Based Discrimination in Employment under the federal Civil Rights Acts of 1874, 1964, and 1991; the federal Age Discrimination in Employment Act; and the New Mexico Human Rights Act (Counts III, V, VI and VII)</u>

In Counts III, V, VI, and VII of her Second Amended Complaint, Goodwin alleges that Defendants discriminated against her based on her gender, race, and age in violation of several federal and New Mexico statutes.[9]  [Doc. 70, pp. 30–32; 34–38].  Defendants move to dismiss

---

[9] In Count VII, Goodwin asserts claims under 42 U.S.C. § 1983 for discrimination in violation of the federal and New Mexico Constitutions.  [Doc. 70, p. 37].  She does not say in her Second Amended Complaint, nor in her responses to the motions to dismiss, whether or how the alleged constitutional violations differ from her

each claim.  [Doc. 73, pp. 12–15]; [Doc. 74, pp. 10–13, 14–18].  For reasons explained below, the statutes require virtually identical statements of unlawful discrimination claims, so they are considered together here.  Goodwin does not state prima facie discrimination claims under any of the statutes, so they must be dismissed.

A.  *Parties' Arguments*

Defendants argue that Goodwin's Second Amended Complaint does not meet her burden to plausibly allege unlawful discrimination.  [Doc. 73, pp. 12–15]; [Doc. 74, pp. 10–13].  They do not dispute, at this stage, that Goodwin falls within classes protected by the statutes she cites and that she suffered adverse employment actions.  *See* [Doc. 73, pp. 12–15]; [Doc. 74, pp. 10–13].  Rather, they argue that Goodwin's allegations are conclusory and do not support an inference that she was discriminated against based on her sex, race, or age.  [Doc. 73, p. 12]; [Doc. 74, pp. 10–11].  More than conclusions are necessary to state a claim under all these statutes; without them, her discrimination claims must be dismissed.  ERB Defendants argue that Goodwin's discrimination claims against them are especially weak because Goodwin alleges the ERB and its Trustees advocated for her to receive the raises the governor vetoed.  [Doc. 73, pp. 12–13].

Goodwin stresses the low burden on plaintiffs to state claims and argues that her allegations satisfy the pleading requirements.  [Doc. 77, pp. 17–20]; [Doc. 78, pp. 16–18].  She does not, however, direct the Court to specific allegations she believes support her discrimination claims or analogize her case to others where courts found similar presentations sufficient to state prima facie discrimination claims.  *See* [Doc. 77, pp. 17–20]; [Doc. 78, pp. 16–18].

---

discrimination claims covered by Title VII, the ADEA, or the Human Rights Act.  *See* [Doc. 70, pp. 36–38]; [Doc. 77, p. 20]; [Doc. 78, pp. 19–20].  Viewed generously, Goodwin's § 1983 claims are repetitive of her other discrimination claims, and the Court will so construe them.

B.  *Relevant Law*

Federal and New Mexico anti-discrimination laws prohibit employers from taking adverse employment actions against employees "because of" the employee's race, sex, or age. *See* 29 U.S.C. § 623(a) ("ADEA") (prohibiting age-based discrimination in employment); 42 U.S.C. § 2000e-2(a) ("Title VII") (prohibiting racial and gendered discrimination in employment); N.M.S.A. 1978 § 28-1-7(A) ("Human Rights Act") (prohibiting racial, gendered, and age-based discrimination in employment).  The *McDonnell Douglas* framework is the Court's north star in cases where plaintiffs allege such discrimination but do not allege facts or present evidence directly showing it.[10]  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–803 (1973) (explaining the framework).  To state an employment discrimination claim against one's employer, plaintiffs must make a prima facie case showing that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ford v. Jackson Nat'l Life Ins.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (applying the *McDonnell Douglas* framework to a case of alleged racial and gendered discrimination under Title VII); *see also Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (holding that the *McDonnell Douglas* framework applies to ADEA claims); *Juneau v. Intel Corp.*, 2006-NMSC-002 ¶ 9, 127 P.3d 548, 551 (recognizing the applicability of the *McDonnell Douglas* framework to employment discrimination claims under the Human Rights Act).  As discussed above, Defendants focus on the third element in their motions to dismiss.

The preposition "because of" in Title VII, the ADEA, and the Human Rights Act requires plaintiffs to prove that discrimination against them for membership in a protected class was a

---

[10] Goodwin alleges no facts which, if true, would directly show gendered, racial, or age-based discrimination, so the Court presumes she intends to show discrimination by indirect evidence.

but-for cause of the alleged adverse action.  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020) (analyzing the words "because of" as used in Title VII).  Generally, wrongful discrimination can be inferred from circumstances where an employer treats similar employees outside a protected class with more favor than those inside the class.  *See Beaird v. Seagate Techs., Inc.*, 145 F.3d 1159 1165 (10th Cir. 1998); *see also McDonald v. City of Wichita*, 156 F. Supp. 3d 1279, 1298 (D. Kan. 2016) (holding that a Title VII plaintiff showed "circumstances giving rise to an inference of discrimination" in a workplace where the female plaintiff was denied a promotion given to a male with less experience and where women, but not men, were often yelled at or the target of derogatory remarks).  If Goodwin alleges facts which plausibly suggest discrimination based on her sex, race, or age, she has stated prima facie claims under Title VII, the ADEA, or the Human Rights Act.

## C.  *Analysis*

Goodwin does not allege facts which support an inference that any of the Defendants discriminated against her based on her sex, race, or age.  Stripping away conclusory statements, Goodwin alleges the following:  All named Defendants knew Goodwin earned less than Moise, [Doc. 70, p. 11]; the ERB voted to increase Goodwin's pay several times, and each time, the governor exercised a de facto veto to prevent Goodwin from getting the raise, (*id.* at 11–13, 15–16, 18); some ERB Trustees communicated to the Governor their belief that it was unfair that Goodwin was not getting the raise, (*id.* at 12); Moise stated he believed Goodwin should get a raise, (*id.* at 14); the ERB sued the Governor's Office and the Department of Finance and Administration to prevent further vetoes, (*id.* at 15–16); and, ultimately, Goodwin found her salary as Director intolerable and so took another job where she now receives higher pay.  *Id.* at 18–19.

Inferring wrongful discrimination from these facts requires clearing a few hurdles.  First is the problem of comparing Goodwin's treatment to similar employees.  Goodwin states no facts to suggest her alleged comparators held comparable jobs and applicable statutes suggest they had very different jobs.  *See FPWA and EPA discussion, above.*  Generally, dissimilar treatment of dissimilar employees does not give rise to an inference of discrimination based on protected characteristics.

Second, Goodwin does not clearly allege adverse treatment common among others with whom she shared characteristics.  For instance, she does not allege she and other white, female, or over-forty employees were subjected to workplace conduct which non-white, male, or younger employees were not.  And although Goodwin's primary complaints are that the governor exercised a veto over her approved raises and that the ERB did not bring legal action sooner, she does not allege that the veto was exercised primarily against white employees but not against non-whites, or that the ERB was quick to sue on behalf of its male employees but not its female employees.  In fact, Goodwin says nothing about how often others' raises were being denied by the Department of Finance and Administration, and she states that inter-agency lawsuits are rare.  *See generally* [Doc. 70].  Overall, Goodwin alleges facts which suggest an ongoing legal and political dispute between New Mexico government officials and the departments they control.  Goodwin's assertion that the dispute is due to animus against her gender, race, or age is speculative, and speculation does not satisfy Goodwin's pleading burden. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Goodwin's discrimination claims under Count III, V, VI, and VII are thus dismissed.

iv. <u>Unlawful Retaliation in Employment under the federal Civil Rights Acts of 1874, 1964, and 1991; the New Mexico Human Human Rights Act; and the New Mexico Whistleblower Protection Act (Counts III, VI, VII, and X)</u>

Goodwin alleges in Counts III, VI, and VII that she was unlawfully retaliated against for opposing unlawful discrimination against her.  [Doc. 70, pp. 30–32, 35–38].  She also alleges in Count X that she was unlawfully retaliated against for communicating about conduct by her public employer which she believed was unlawful or improper.  *Id.* at 40–42.  Her causes of action for each of these claims are slightly different, but share key common elements, so they are considered together here.  Goodwin fails to state retaliation claims under relevant anti-discrimination and whistleblower protection laws because she does not allege she personally opposed or communicated information about unlawful conduct, so her claims must be dismissed.

A. *Parties' Arguments*

Defendants do not question, at this stage, whether Goodwin suffered an adverse employment action which could qualify as "retaliation."  [Doc. 73, pp. 17–20]; [Doc. 74, pp. 10–13, 14–18, 21–22].  Rather, Defendants argue that Goodwin never engaged in conduct against which they could retaliate—that is, she never reported anything she believed to be illegal.  [Doc. 73, pp. 17–18]; [Doc. 74, pp. 11–13, 21].  It is true, they concede, that the ERB and some of its Trustees communicated dissatisfaction with Goodwin's salary by way of emails and letters, resubmitted paperwork, and the ERB's lawsuit against the Department of Finance and Administration.  [Doc. 73, p. 18]; [Doc. 74, pp. 12–13].  But, they say, these actions do not state a claim for retaliation under any of the cited statutes because Goodwin was not the one to "communicate" about or engage in "protected opposition" to the relevant actions.  [Doc. 73, pp. 19–20]; [Doc. 74, p. 12–13].  Goodwin, however, argues that her requests for a higher salary, the ERB's votes to raise her salary, and the ERB's lawsuit against the DFA were each an

24

instance of protected opposition and communication on her behalf.  [Doc. 77, pp. 22–24];
[Doc. 78, pp. 17–18, 22–23].

                               B.  *Relevant Law*

Goodwin's retaliation claims require her to have communicated her opposition to
practices she believed were unlawful.  Federal and New Mexico anti-discrimination laws
prohibit employers from retaliating against employees for opposing unlawfully discriminatory
employment practices.  42 U.S.C. § 2000e-3(a); N.M.S.A. 1978 § 28-1-7(I)(2).  A plaintiff suing
for unlawful retaliation under these statutes must show that (1) she engaged in protected
opposition to a discriminatory practice; (2) the employer took an adverse employment action
against her; and (3) her protected opposition caused the adverse employment action.  *Fassbender
v. Correct Care Sols.*, 890 F.3d 875, 890 (10th Cir. 2018) (applying the criteria to a Title VII
retaliation claim); *Ulibarri v. State of New Mexico Corr. Acad.*, 2006-NMSC-009 ¶ 16, 131 P.3d
43, 50 (applying identical criteria to a Human Rights Act retaliation claim).  The New Mexico
Whistleblower Protection Act provides similar protection, stating that a public employer may not
retaliate against a public employee because she "communicates to the public employer or a third
party information about an action or failure to act that the public employee believes in good faith
constitutes an unlawful or improper act[.]"  N.M.S.A. 1978 § 10-16C-3(A).  Plaintiffs under the
Whistleblower Protection Act must thus allege that the defendant retaliated against them because
of a communication protected by the Act.  *See Wills v. Bd. of Regents of Univ. of N.M.*, 2015-
NMCA-105 ¶ 14, 357 P.3d 453, 456.

The bar to satisfy the "protected opposition" and "communication" requirements of these
laws is not high, but not all statements will meet it.  In the anti-discrimination context, the Tenth
Circuit has held that formal or informal complaints alike can be protected opposition; "no magic

                                       25

words are required," but "to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a[n unlawful] practice[.]"  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (applying anti-retaliation provisions of the ADEA); *see also Anderson v. Wintco Inc.*, 314 F. App'x 135, 141 (10th Cir. 2009) (unpublished) (applying *Hinds* in the Title VII context).  "General complaints" about management or working conditions will not do.  *Hinds*, 523 F.3d at 1203.  The Whistleblower Protection Act's "communication" requirement is similar, though somewhat broader.  A whistleblower plaintiff must communicate "information about an action or failure to act that [she] believes in good faith constitutes an unlawful or improper act."  N.M.S.A. 1978 § 10-16C-3(A).  This means whistleblower plaintiffs must allege facts which plausibly suggest they communicated about a "proposed or actual practice, procedure, action or failure to act on the part of a public employer" which they believe "violates or may violate a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state."  *See Dart v. Westfall*, 2018-NMCA-061 ¶ 12, 428 P.3d 292, 297.

C.  *Analysis*

Goodwin does not allege facts which plausibly suggest she "communicated" about or engaged in "protected opposition" to acts she believed may have been unlawful or improper, so her retaliation claims must be dismissed.

Goodwin alleges five discrete kinds of communications about her salary:  (1) votes by the ERB to increase Goodwin's salary as Director, each de facto vetoed by the sitting governor, *see* [Doc. 70, pp. 11–13]; (2) written communications by ERB Trustees to the Governor's Office stating their dissatisfaction with Goodwin's salary (*id.* at 12); (3) resubmission of paperwork to approve Goodwin's raise when Governor Lujan Grisham took office (*id.* at 13); (4) an email by

26

the ERB's lawyer to Governor Lujan Grisham's counsel stating the ERB's belief that the governor did not have the power to veto Goodwin's voted upon raises, (*id.* at 14–15); and (5) the ERB's lawsuit against the DFA.  *Id.* at 15–16.  Goodwin also states that all Defendants "were formally requested to cure the enormous pay disparity between Mr. Moise and Ms. Goodwin" but, as written, she seems to refer to the instances listed above, not a separate communication specifying her belief that the pay disparity itself was illegal.  *See id.* at 9–10.  Labeling these actions "protected opposition" or "communications" by Goodwin for purposes of her retaliation claims is problematic for two reasons.

First, Goodwin does not allege that *she* ever opposed or communicated about not getting a raise.  The statutes are clear – public employees may claim whistleblower protection if "the public employee" makes a protected communication (N.M.S.A. 1978 § 10-16C-3(A)) and an employee can make an anti-discrimination retaliation claim when her employer discriminates against her "because [s]he has opposed" an unlawful practice.  42 U.S.C. § 2000e-3(a); N.M.S.A. 1978 § 28-1-7(I)(2).  Goodwin argues she vicariously engaged in protected opposition and made communications by claiming that that the ERB and its Trustees were speaking on her behalf, but her approach cuts against the plain statutory language.  She cites no cases to suggest that the statutes implicitly permit vicarious opposition or communication, and the Court can find none.  And even if the statutes may sometimes permit one person to engage in protected opposition or communication on behalf of another, the communications themselves suggest that the speakers intended to speak for themselves or for the ERB as an institution, not for Goodwin.[11]  *See*

_____

[11] Goodwin's vicarious opposition and communication theory also would only state claims against the State Defendants because all communications alleged were by the ERB or its Trustees and directed at State Defendants. *See* [Doc. 70, pp. 11–16].  It is absurd to read the ERB's communications as reporting itself and its trustees to itself and its trustees, especially when those communications reported, at best, allegedly illegal conduct by the governor and the DFA, not by the ERB Defendants.  *See id.* at 89–91.

27

[Doc. 70, pp. 68–69 (ERB Chairperson complaining that Goodwin was denied her raise); 72–73; 87; 89–91 (arguing that the ERB has the sole power to set the Director's salary); 92; 95; 96–107 (state court complaint stating argument for the ERB's constitutional and financial independence)].  This does not suffice to state a retaliation claim.

Second, even accepting her vicarious communication theory, the alleged communications were not protected opposition because they do not claim there was unlawful discrimination.[12] Goodwin alleges that the ERB voted to increase her salary, but nothing in her complaint suggests they did this to communicate a belief that she was being illegally discriminated against.  *See id.* at 11–13.  Written correspondence suggests that ERB Trustees were frustrated that Goodwin did not receive the raises they voted for, but their frustration apparently stemmed from wanting to offer a nationally competitive salary, not from a belief that Goodwin was being discriminated against for her sex, race, or age.  *Id.* at 68–69; 73; 95.  And by Goodwin's own admission, the ERB's state court complaint "does not address the civil rights issues raised [in the Second Amended Complaint.]"  *Id.* at 15–16.  Reading Goodwin's Second Amended Complaint and her attachments to it in the light most favorable to her, Goodwin shows only that the ERB and two consecutive state governors disagreed about how much to pay her and who had the power to decide—not that the ERB believed it was trying combat unlawful discrimination.  For these reasons, Goodwin's unlawful retaliation claims alleged under Counts III, VI, VII, and X must be dismissed.

---

[12] If accepted, it is possible that Goodwin's vicarious communication theory would allow her to state a claim under the Whistleblower Protection Act on the grounds that the ERB's communications to State Defendants about the constitutional independence of the ERB communicated "information about an action or failure to act that a public employee believes in good faith constitutes an unlawful or improper act[.]"  *See* N.M.S.A. 1978 § 10-16C-3(A).  Goodwin does not argue this, and her vicarious communication theory fails, so the Court does not explore the issue further.

v.   Claims Asserted under 42 U.S.C. § 1981a (Counts III and VII)

State Defendants move to dismiss Goodwin's claims alleged under 42 U.S.C. § 1981a insofar as she attempts to assert an independent cause of action under the statute, and all Defendants assert that her claims for punitive damages pursuant to § 1981a must fail because the statute does not permit punitive damage awards against government defendants.  [Doc. 73, p. 15]; [Doc. 74, pp. 13–14].  Defendants appear to be correct on both points.  *See Sessions v. New Mexico*, 20-cv-00606-MV-KRS, 2022 WL 14812844 at *3–4 (D.N.M. Oct. 26, 2022) (unpublished) (holding that § 1981a does not permit punitive damages against government defendants and finding it adds damages to Title VII claims against some defendants but does not create a cause of action).  Goodwin asserts that § 1981a creates a cause of action but discusses 42 U.S.C. § 1981, not § 1981a, and offers no counter to the statute's plain language barring punitive damages against government defendants.  [Doc. 78, pp. 18–19]; *see generally* [Doc. 77].  Because § 1981a creates no cause of action and its punitive damages remedies cannot be sought against Defendants, the Court dismisses the § 1981a claims in Counts III and VII.

vi.   Claims under the federal Civil Rights Act of 1871 against Defendants in their Official Capacities (Count VII)

In addition to arguing Goodwin does not state a claim for relief in Count VII, Defendants also move to dismiss Goodwin's § 1983 claims under that count insofar as she attempts to sue the individual Defendants in their official capacities, arguing they are immune to such suit.  [Doc. 73, p. 15]; [Doc. 74, pp. 14–17].  As an alternative ground for partial dismissal of Count VII, the Court finds that they are immune.

The Eleventh Amendment to the United States Constitution immunizes a State from lawsuits in federal court by any citizen of the State.  *See* U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890) (extending Eleventh Amendment immunity to suits by

citizens of the defendant State).  Generally, state officials acting in their official capacities are acting on behalf of the State and thus receive Eleventh Amendment immunity from lawsuits against them in that capacity.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Elephant Butte Irrigation Dist. of N.M. v. U.S. Dept. of Interior*, 160 F.3d 602, 607 (10th Cir. 1998).  State officials may nonetheless be sued in their official capacities when one of three exceptions apply:  (1) the State has consented to be sued; (2) Congress clearly and expressly abrogated the State's immunity; or (3) the official has violated or is violating federal law and is sued for prospective equitable relief under *Ex parte Young*, 209 U.S. 123 (1908).  *Elephant Butte Irrigation Dist.*, 160 F.3d at 607–08.

ERB and State Defendants argue that the exceptions above do not apply to § 1983 claims and that Count VII should thus be dismissed against them in their official capacities.  [Doc. 73, p. 15]; [Doc. 74, pp. 16–17].  Goodwin seems to defend Count VII only as to her claims against the named defendants in their individual, not official, capacities.  *See* [Doc. 77, p. 20]; [Doc. 78, pp. 19–20].  With no argument for an exception to the general rule of immunity set forth above, and the Court seeing no obvious exception, Count VII must be dismissed against the named defendants in their official capacities.

> vii.  Denial of Due Process of Law and Equal Protection under the Fourteenth Amendment to the United States Constitution (Count VIII)

Goodwin purports to bring her claims under Count VIII against the State of New Mexico, the Office of the Governor, the DFA, New Mexico's Risk Management Division, and the ERB pursuant to the Fourteenth Amendment of the United States Constitution.  *See* [Doc. 70, pp. 38– 39].  The Fourteenth Amendment, however, generally does not create an independent cause of

action.[13]  *See Varkas v. Rodriquez*, 728 F.2d 1293, 1296 (10th Cir. 1984).  Defendants construe

Count VIII to raise claims under 42 U.S.C. § 1983, which creates a private cause of action

against individuals who, under color of state law, violate another's constitutionally protected

rights.  [Doc. 73, p. 16]; [Doc. 74, pp. 23–24].  Even liberally construing Goodwin's pleading,

however, Defendants maintain the Eleventh Amendment immunizes them from suit because they

are arms of the State of New Mexico which have not consented to be sued and § 1983 does not

abrogate their Eleventh Amendment immunity.  [Doc. 73, p. 16]; [Doc 74, pp. 23–24] (citing

*Conner v. Rodriguez*, 10-cv-00512, 2010 WL 11619172 (D.N.M. Sept. 15, 2010)).  Defendants

appear to be correct.  *See Will*, 491 U.S. at 65.  Goodwin does not argue for an exception to the

general rule that the Fourteenth Amendment creates no private right of action, nor that Count

VIII may proceed against arms of the State despite apparent Eleventh Amendment immunity.

*See* [Doc. 77, pp. 20–22]; [Doc. 78].  The Court thus finds that Count VIII must be dismissed

entirely.

> viii.  Denial of Due Process of Law and Equal Protection under the New
> Mexico Constitution (Count IX)

Goodwin purports to bring, under Count IX, claims virtually identical to Count VIII

against the same Defendants but under analogous provisions of the New Mexico Constitution.

[Doc. 70, pp. 39–40].  ERB Defendants argue that, without an express waiver of the State's

immunity in the Tort Claims Act, plaintiffs cannot sue State government entities for violations of

the New Mexico Constitution.  [Doc. 73, p. 16–17].  Again, they appear to be correct.  *See*

---

[13] Sometimes, the Fourteenth Amendment provides a private cause of action for damages to individuals whose
constitutional rights are violated.  *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 389 (1971).
Recently, however, the Supreme Court has held that recognizing such causes of action is a "disfavored judicial
activity" because it is "a legislative endeavor."  *Egbert v. Boule*, 142 S. Ct. 1793, 1802–03 (2022) (discussing the
factors considered by courts when asked to extend *Bivens*).  Goodwin did not raise this exception in briefing, so the
Court will not consider its applicability to her case.

31

*Barreras v. State of New Mexico Corr. Dept.*, 2003-NMCA-027 ¶ 24, 62 P.3d 770, 776 ("[T]he courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act").  Goodwin makes no argument to show that the State has waived its immunity to lawsuits based on the New Mexico Constitution.  [Doc. 77, pp. 20–22]; *see generally* [Doc. 78] (making no argument about Count IX or the New Mexico Constitution).  Goodwin's claims under Count IX are thus dismissed.

   ix. <u>Breach of Implied Contractual Covenant of Good Faith and Fair Dealing (Count XI)</u>

  Defendants move to dismiss Count XI on the grounds that it is based on the breach of an at-will employment contract for which Goodwin cannot sue and because New Mexico law bars contract disputes between public employees and their public employer unless the employee has a written employment contract with the State.  [Doc. 73, pp. 20–21]; [Doc. 74, pp. 19–21].  Goodwin counters that there are exceptions to both rules but does not explain whether or how they apply to her case.  [Doc. 77, p. 24]; [Doc. 78, pp. 21–22].  The Court finds the Defendants are immune.

  New Mexico governmental entities are immune from contract claims unless the action is based on "a valid written contract."  N.M.S.A. 1978 § 37-1-23(A).  New Mexico courts interpret the writing requirement liberally in employment disputes and allow public employees to rely on informal documents, like workplace codes of conduct or personnel manuals, to establish "a valid written contract."  *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029 ¶ 11, 918 P.2d 7, 10–11.  Goodwin could then argue that a written communication or workplace manual created a written employment contract between her and her employer—if she alleged those kinds of facts.  The Court cannot find, and Goodwin does not cite, any portions of her

Second Amended Complaint alleging the existence of a writing which could create a written

contract between her and the ERB or any other Defendant.  Count XI, which alleges claims

against the State and the ERB, must therefore be dismissed.

> x.  <u>Tort Claims for Intentional Interference with Employment Contract;
> Intentional Infliction of Emotional Distress; Negligent, Reckless, or
> Intentional Breach of Fiduciary Duties (seeking Promissory Estoppel); and
> Civil Conspiracy (Counts XII, XIII, XIV, and XV)</u>

State Defendants Lujan Grisham, Romero, and Tyndall move that the Court dismiss

Goodwin's assorted tort claims against them because the Tort Claims Act generally immunizes

them from liability for torts committed in their official capacities and Goodwin's claims do not

fall within an exception to that immunity.  [Doc. 74, pp. 22–23].  Goodwin "does not concede

dismissal" on Counts XII through XV but makes no argument for why they should not be

dismissed.  [Doc. 78, p. 23].  Defendants' position seems correct.  The Court can find no

provisions of the Tort Claims Act which waive Defendants' governmental immunity from these

claims and case law affirms there is no such waiver.  *See* N.M.S.A. 1978 §§ 41-4-4 through -12

(establishing governmental immunity and creating exceptions); *El Dorado Utils. v. Eldorado*

*Area Water & Sanitation Dist.*, 2005-NMCA-036 ¶ 25, 109 P.3d 305, 311 (holding

governmental entities are immune from claims for tortious interference with contracts); *Garcia-*

*Montoya v. State Treasurer's Office*, 2001-NMSC-003 ¶ 49, 16 P.3d 1084, 1102 (holding the

Tort Claims Act grants immunity against intentional tort claims generally unless plaintiff shows

defendants acted outside the scope of their duties); *Seeds v. Lucero*, 2005-NMCA-067 ¶ 16, 113

P.3d 859, 863 ("a public employee's conspiratorial and wrongful intent does not remove the

employee's immunity when the employee's acts are within the scope of his or her duties").

Counts XII, XIII, XIV, and XV are thus dismissed.

xi.   Claim for Declaratory Relief (Count XVI)

Finally, Defendants ask that the Court dismiss Goodwin's claim for declaratory relief.

[Doc. 73, pp. 21–22].  Goodwin asks this Court to declare that (1) Moise's "historical pay rate"

should be used to calculate Goodwin's past damages for her pay discrimination claims; (2)

Moise is the proper opposite-sex comparator employee for her pay discrimination claims; and (3)

the State of New Mexico "having failed for the last decade to pay [Goodwin] equal to her male

comparator(s), be now charged with the responsibility for correcting her historic pay disparity

and all consequential damages therefrom[.]"  [Doc. 70, pp. 49–50].  Each requested declaration

is resolved by the Court's holding that she states no plausible claims for relief on her

discrimination claims.  Goodwin's claim for declaratory relief is dismissed.

## VI.   CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss [Docs. 71, 74]

are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Surreply

[Doc. 88] is **DENIED.**

Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent